J-A05031-22

2022 PA Super 84

| | | |
|---|---|---|
| ELLISON O. JORDAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE PENNSYLVANIA STATE | : | No. 76 MDA 2021 |
| UNIVERSITY, SANDY BARBOUR, | : | |
| CHARMELLE GREEN, JAMES | : | |
| FRANKLIN, ANDY MUTNAN, RENEE | : | |
| MESSINA, SCOTT A. LYNCH, M.D., | : | |
| PETER H. SEIDENBERG, M.D., JOHN | : | |
| S. REID, M.D., BRENDAN M. CARR, | : | |
| TIM BREAM, WES SOHNS, PENN | : | |
| STATE HEALTH, MILTON S. HERSHEY | : | |
| MEDICAL CENTER, PENN STATE | : | |
| HERSHEY MEDICAL GROUP,  AND | : | |
| MOUNT NITTANY HEALTH | : | |

Appeal from the Order Entered December 4, 2020
in the Court of Common Pleas
of Centre County Civil Division at No(s):  20-0028

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED:  MAY 9, 2022**

Appellant, Ellison O. Jordan, appeals **pro se** from the December 4,
2020[1] order sustaining the preliminary objections filed by Appellees, The
Pennsylvania State University, Sandy Barbour, Charmelle Green, and James
Franklin (hereinafter, "University Appellees"); granting the petitions filed by
Appellees, Scott A. Lynch, M.D., Mount Nittany Health, Andy Mutnan, Renee

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant erroneously refers to this order as having been entered on
December 8, 2020.

Messina, Brendan M. Carr, Tim Bream, Wes Sohns, Peter H. Seidenberg, M.D.,

John S. Reid, M.D., Penn State Health, Milton S. Hershey Medical Center, and

the Penn State Hershey Medical Group (thereafter, "Healthcare Appellees"),

to hold Appellant in contempt of court; and dismissing Appellant's amended

complaint and supplemental amended complaint with prejudice.  Appellant

also appeals from the December 23, 2020 order denying his motion to recuse

President Judge Pamela A. Ruest from this case.  For the following reasons,

we affirm.

The trial court summarized the relevant facts and lengthy procedural

history of this case as follows:

> This case arises from injuries [Appellant] allegedly
> sustained during his time as a student-athlete on the
> Penn State University football team between June
> 2016 and August 2019.  [Appellant's] cause of action
> specifically focuses on his treatment following a
> December 27, 2017 surgery to repair a right knee
> patellar fracture he suffered while practicing for the
> Fiesta Bowl in Phoenix, Arizona.  [Appellant] alleges
> he reinjured his knee on January 8, 2018 while
> receiving treatment from Wes Sohns, which required
> [Appellant] to undergo surgery on January 12, 2018.
> In April 2018, [Appellant] reported feeling pain and
> discomfort in his right knee.  In September 2018,
> [Appellant] was evaluated for reported pain and
> swelling in his right knee, which was attributed to
> tendinitis and the prominence of the plate placed
> during surgery, but did not rule out the possibility of
> an infection.
>
> Between September and November 2018, [Appellant]
> continued to experience right knee pain and
> [Appellant] underwent a right knee arthroscopy on
> November 21, 2018.  On November 25, 2018,
> [Appellant] and his parents attended a meeting with

fifteen (15) representatives of Penn State University, who asked [Appellant] to sign a document voluntarily withdrawing himself from the football team. On December 30, 2018, [Appellant] was taken to the Emergency Room due to extreme knee pain and swelling. [Appellant] informed James Franklin on January 5, 2019 that his right knee was infected and [Appellant] underwent surgery to address the infection on January 8, 2019. On August 19, 2019, [Appellant] was removed from the Penn State football team.

[Appellant] originally filed a complaint on January 31, 2020 based on a theory of medical malpractice. University [Appellees] filed preliminary objections on February 24, 2020. [Appellant] filed a certificate of merit for each [Appellee] on February 28, 2020, but failed to file a written statement from an appropriate licensed professional with the certificates of merit. All of the named [Appellees] other than the University [Appellees] filed a Notice of Intention to Enter Judgment of Non Pros for Failure to File a Written Statement from an Appropriate Licensed Professional between March 4 and March 11, 2020. [Appellant] filed an Answer to [Appellees'] Notices on April 17, 2020. On May 12 and May 13, 2020, the Centre County Prothonotary's Office entered Judgment of Non Pros in favor of all [Appellees] other than the University [Appellees].

On June 1, 2020, [Appellant] filed a Petition for Relief of Judgment of Non Pros requesting the court strike the judgments and restore [Appellant's] complaint in its entirety. Between June 12 and June 22, 2020, each of the [Appellees] filed a response seeking to uphold their Judgment of Non Pros. A hearing was held on June 25, 2020. On July 15, 2020, the court entered an opinion and order denying [Appellant's] petition for relief, sustaining the University [Appellees'] preliminary objections, and dismissing [Appellant's] medical malpractice claims with prejudice. The court dismissed [Appellant's] complaint and allowed [Appellant] to file an amended complaint within twenty (20) days against only the

- 3 -

University [Appellees] and only raising potential claims of intentional or negligent infliction of emotional distress and ordinary negligence. [Appellant] filed a petition for reconsideration on July 24, 2020, which was denied by the court on July 30, 2020.

[Appellant] filed an amended complaint on August 3, 2020, and a supplemental amended complaint on August 12, 2020, both of which included claims against all of the [Appellees] from [Appellant's] original complaint. Between August 7 and August 14, 2020, counsel for all of the [Appellees] except for the University [Appellees] sent letters to [Appellant] requesting that he remove them from his amended complaint or they would seek to hold [Appellant] in contempt of court. [Appellant] failed to respond and [Appellees Scott A. Lynch, M.D., Mount Nittany Health, Andy Mutnan, Renee Messina, Brendan M. Carr, Tim Bream, Wes Sohns, Peter H. Seidenberg, M.D., John S. Reid, M.D., Penn State Health, The Milton S. Hershey Medical Center, and the Penn State Hershey Medical Group] each filed a petition to hold [Appellant] in contempt of court.

On August 24, 2020, [Appellant] filed notices of intention to enter default judgments against each [Appellee] because they allegedly failed to enter a written appearance and file in writing with the court their defenses or objections to [Appellant's] amended complaint. University [Appellees] file preliminary objections and a brief in support on August 31, 2020. [Appellant] filed a praecipe for determination on September 3, 2020 alleging University [Appellees'] preliminary objections were not filed in accordance with Pennsylvania law for failing to serve [Appellant] a copy of their preliminary objections. [Appellant] filed a response in opposition to University [Appellees'] preliminary objections on September 16, 2020, and an answer to order to show cause on October 9, 2020. [Appellant] also filed a statement of support on October 19, 2020. A hearing was held on October 12, 2020.

Trial court opinion, 12/4/20 at 2-4 (extraneous capitalization omitted).

On December 4, 2020, the trial court entered an opinion and order sustaining the University Appellees' preliminary objections; holding Appellant in contempt of court; and dismissing Appellant's amended complaint and supplemental amended complaint with prejudice. On December 15, 2020, Appellant filed a motion to recuse P.J. Ruest from this case, which was denied by the trial court on December 23, 2020.

On January 6, 2021, Appellant filed a notice of appeal. Although not ordered to do so, Appellant filed an eight-page Pa.R.A.P. 1925(b) statement on May 12, 2021. The trial court filed its Rule 1925(a) opinion on May 20, 2021, indicating that it was relying on the reasoning set forth in its prior opinion and orders entered December 4 and 23, 2020.

Appellant raises the following issues for our review:

1.    Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion in issuing the correspondence, in identifying the case as only medical malpractice, in processing the case on an "aggressive fast track" without any established written local procedures, in not providing definitive goals and objects and making them know to all parties involved and denying [Appellant] a right to jury trial as demanded?

2.    Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning all pleadings, notices, judgments, opinions and orders concerning the Certificate of Merit of the

original Complaint, Amended Complaint and Supplemental Amended Complaint?

3. Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning the service of process?

4. Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning Preliminary Objections?

5. Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning her personal interest in the outcome of the case and potential appearance of conflict of interest and bias?

6. Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning "special relationship", "duty of care", "standard of care", "preventative measures", "heightened duty of care", "unreasonable risk of harm", "foreseeability of harm", "duty to convey", "duty to exercise reasonable care", "affirmative duty", "an act within scope of employment", "nondelegable duty", "breach of duty", "breach of duty was more likely than not (i.e., probably") the cause of the injury" and "proper medical treatment"[?]

7. Did the [trial] court ignore the law, errored [sic] in applying the law, misinterpreted [sic] the law and/or abuse its discretion concerning processing the civil complaint?

Appellant's brief at 5-7.

Our standard of review of a challenge to a trial court's decision to grant preliminary objections is as follows:

- 6 -

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super. 2011) (citation omitted).

This Court has explained our standard of review for a civil contempt order as follows:

> When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason.

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009) (citations omitted).

Preliminarily, we must address whether Appellant has properly preserved all of his claims on appeal. Our review of the disjointed "Argument" section in Appellant's 68-page *pro se* brief reveals that a number of his claims take issue with the trial court's entry of Judgments of Non Pros for Failure to File Written Statement from Appropriate Licensed Professional. *See* Appellant's brief at 24-37.

As discussed, on May 12 and 13, 2020, Judgments of Non Pros were entered in favor of all Appellees other than the University Appellees. Appellant subsequently filed a petition for relief from the Judgments of Non Pros requesting the trial court strike the judgments and restore his complaint in its

entirety. Thereafter, each of the Appellees filed a response seeking to uphold their Judgment of Non Pros. Following a hearing, the trial court entered an opinion an order on July 15, 2020 denying Appellant's petition for relief; dismissing the medical malpractice claims in his complaint with prejudice; and directing Appellant that his amended complaint could only raise claims against the University Appellees for intentional or negligent infliction of emotional distress and ordinary negligence. **See** "Opinion and Order," 7/15/20 at 12-13. Appellant filed a petition for reconsideration which was denied on July 30, 2020.

This Court has long recognized that "[a]ny appeal related to a judgment of non pros lies not from the judgment itself, but from the denial of a petition to open or strike." **Cardona v. Buchanan**, 230 A.3d 476, 479 (Pa.Super. 2020) (citation omitted). Under Pa.R.A.P. 311(a)(1), an appeal from an interlocutory order refusing to open, vacate or strike off a judgment is deemed final and subject to attack on appeal without reference to Pa.R.A.P. 341(c). **Hammel v. Hammel**, 636 A.2d. 214, 217 (Pa.Super. 1994) (citation omitted). Notably, the "[f]ailure to timely appeal from an order denying a petition to open, vacate, or strike off a judgment renders any attack of that order untimely and waived." **Blackburn v. King Inv. Grp., LLC**, 162 A.3d 461, 464 (Pa.Super. 2017) (citation omitted).

Instantly, the record reflects that Appellant's January 6, 2021 notice of appeal makes no mention of the trial court's July 15, 2020 order denying his

petition for relief from Judgment of Non Pros, nor the July 30, 2020 order denying his petition for reconsideration of relief from Judgment of Non Pros.[2] Although Appellant baldly contends in his brief that he is seeking "reversal of **all the lower court's opinions and orders … and judgments**," his notice of appeal indicates that he is only appealing from the trial court's December 4 and December 23, 2020 orders.  **See** Appellant's brief at 1 (emphasis added); Appellant's "Notice of Appeal," 1/6/21.

Appellant's failure to appeal from the trial court's July 15, 2020 order renders his appeal procedurally deficient because neither of the trial court's December 2020 orders directly addresses the Judgments of Non Pros Appellant purports to challenge on appeal.

Pennsylvania Rule of Appellate Procedure 904 requires a petitioner to specifically identify in his notice of appeal the order from which  he wishes to appeal.  Pa.R.A.P. 904(a).  Moreover, this Court has long recognized that,

> although [we are] willing to liberally construe materials filed by a **pro se** litigant, **pro se** status confers no special benefit upon the appellant.  To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing."

---

[2] We note that any attempt by Appellant to appeal from the July 30, 2020 order denying the petition for reconsideration would have nonetheless been improper.  An order denying a motion for reconsideration is not appealable. **See Huntington Nat. Bank v. K–Cor, Inc.**, 107 A.3d 783, 787 (Pa.Super. 2014) (stating, "Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal."), **appeal denied**, 117 A.3d 1281 (Pa. 2015).

- 9 -

***Wilkins v. Marsico***, 903 A.2d 1281, 1284–1285 (Pa.Super. 2006) (citations and internal quotation marks omitted), ***appeal denied***, 918 A.2d 747 (Pa. 2007).

Accordingly, Appellant's failure to appeal the trial court's July 15, 2020 order denying his petition for relief from Judgment of Non Pros renders all his claims related to this order waived. ***See Blackburn***, 162 A.3d at 464; ***see also*** Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We now turn to Appellant's claim that the trial court's December 23, 2020 order denying his motion to recuse P.J. Ruest from this case was improper because of her "impartiality, bias, and a personal interest in the outcome of [this] case." Appellant's brief at 38-41; ***see also*** "Motion to Recuse," 12/15/20 at ¶ 1. For the reasons that follow, we find that this claim is time barred.

It is well settled that "a party may not raise the issue of judicial prejudice or bias for the first time in post[-]trial proceedings." ***Ware v. U.S. Fid. & Guar. Co.***, 577 A.2d 902, 905 (Pa.Super. 1990) (citation omitted). On the contrary, "a party seeking recusal or disqualification on the basis of judicial bias or impartiality "[is required] to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." ***In re Lokuta***, 11 A.3d 427, 437 (Pa. 2011) (citations omitted; brackets in original), ***cert. denied***, 565 U.S. 878 (2011). "The timeliness of such an

- 10 -

application is particularly troubling where a party seeks disqualification only after receiving adverse judgment." ***League of Women Voters of Pa. v. Commonwealth***, 179 A.3d 1080, 1086 (Pa. 2018) (citation omitted).

Instantly, the record reflects that Appellant failed to raise his claim of judicial bias at the earliest possible opportunity. Appellant's motion to recuse was filed on December 15, 2020, more than 7 months after P.J. Ruest entered her first order in this case on May 12, 2020, and only eleven days after P.J. Ruest entered an order dismissing Appellant's amended complaint and supplemental amended complaint with prejudice. Based on the foregoing, Appellant's recusal claim was clearly time-barred and its denial by the trial court was warranted.

Appellant's remaining claims concern the trial court's December 4, 2020 order sustaining the University Appellees' preliminary objections; granting the Healthcare Appellees' petitions to hold Appellant in contempt of court; and dismissing his amended complaint and supplemental amended complaint with prejudice. ***See*** Appellant's brief at 38-59.

As best we can discern from his somewhat befuddling and convoluted appellate brief, Appellant takes issue with the trial court's rejection of his claims for negligent or intentional infliction of emotional distress and ordinary negligence against the University Appellees, as well as the court's determination that he should be held in contempt of court for continuing to pursue action against the Healthcare Appellees in his supplemental amended

complaint after the trial court explicitly ordered him not to do so.

Following our careful review of the record, including the briefs of all the parties and the applicable case law, and in light of this court's scope and standard of review, it is our determination that there is no merit to Appellant's remaining claims on appeal. We agree with the trial court that all of Appellant's cognizable issues on appeal were adequately disposed of in its December 4, 2020 opinion and order. Accordingly, we adopt the well-reasoned opinion of the Honorable Pamela A. Ruest as our own for purposes of this appellate review and affirm on the basis of the reasoning stated therein.

Orders affirmed.[3]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/09/2022

---

[3] We note that it is well-settled law that "a **pro se** litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." **Ebbert v. Mest**, 2016 WL 5266540, at *1 (Pa.Super. 2016), citing **Commonwealth v. Lyons**, 833 A.2d 245, 251-252 (Pa.Super. 2003).

Filed 2/8/2021 2:57:00 PM Superior Court Middle District
76 MDA 2021

**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

ELLISON O. JORDAN       :
    Plaintiff        :
              :
              :
   v.          :    No. 2020-0028
              :
THE PENNSYLVANIA STATE   :
UNIVERSITY, SANDY BARBOUR,  :
CHARMELLE GREEN, JAMES FRANKLIN, :
ANDY MUTNAN, RENEE MESSINA,  :
SCOTT A. LYNCH, M.D., PETER H.  :
SEIDENBERG, M.D., JOHN S. REID, M.D., :
BRENDAN M. CARR, TIM BREAM,  :
WES SOHNS, PENN STATE HEALTH,  :
THE MILTON S. HERSHEY MEDICAL  :
CENTER, PENN STATE HERSHEY  :
MEDICAL GROUP, and MOUNT   :
NITTANY HEALTH,      :
     Defendants    :
              :

*Attorney for Plaintiff:*         *Pro Se*
*Attorney for Defendants PSU, Sandy Barbour, Charmelle*
*Green, and James Franklin:*      *James P. DeAngelo, Esq.*
*Attorney for Defendants Andy Mutnan, Renee Messina,*
*Brendan Carr, Tim Bream, and Wes Sohns:*  *Joe H. Tucker, Esq.*
*Attorney for Defendant Scott A. Lynch, M.D.:*  *Wiley P. Parker, Esq.*
*Attorney for Defendants Peter H. Seidenberg, M.D., John*
*S. Reid, M.D., Penn State Health, The Milton S. Hershey*
*Medical Center, and Penn State Hershey Medical Group:* *April C. Simpson, Esq.*
*Attorney for Defendant Mount Nittany Health:*  *Brian J. Bluth, Esq.*

## OPINION and ORDER

**Ruest, P.J.**

Presently before the Court are Petitions to Hold Ellison O. Jordan ("Plaintiff") in

Contempt of Court filed on August 24, 2020 by Defendant Scott A. Lynch, M.D., Defendants

Andy Mutnan, Renee Messina, Brendan Carr, Tim Bream, and Wes Sohns, and Defendants Peter

H. Seidenberg, M.D., John S. Reid, M.D., Penn State Health, The Milton S. Hershey Medical

☒O ☐RD ☐S

Center, and Penn State Hershey Medical Group. Defendant Mount Nittany Health filed a Motion to Dismiss and Petition for Contempt on August 28, 2020. Also before the Court are Defendants The Pennsylvania State University, Sandy Barbour, Charmelle Green, and James Franklin's (collectively, the "University Defendants") Preliminary Objections filed on August 31, 2020 and Plaintiff's Praecipe for Default Judgment and Praecipe for Determination filed on September 2, 2020 and September 3, 2020, respectively. University Defendants filed a Brief in Support on August 31, 2020 and Plaintiff filed a Response in Opposition on September 16, 2020. Plaintiff also filed a Statement of Support on October 19, 2020. A hearing was held on October 12, 2020. Upon the consideration of the arguments of counsel and the filings, the Court finds as follows:

## Background

This case arises from injuries Plaintiff allegedly sustained during his time as a student-athlete on the Penn State University football team between June 2016 and August 2019. Plaintiff's cause of action specifically focuses on his treatment following a December 27, 2017 surgery to repair a right knee patellar fracture he suffered while practicing for the Fiesta Bowl in Phoenix, Arizona. Plaintiff alleges he reinjured his knee on January 8, 2018 while receiving treatment from Wes Sohns, which required Plaintiff to undergo surgery on January 12, 2018. In April 2018, Plaintiff reported feeling pain and discomfort in his right knee. In September 2018, Plaintiff was evaluated for reported pain and swelling in his right knee, which was attributed to tendinitis and the prominence of the plate placed during surgery, but did not rule out the possibility of an infection.

Between September and November 2018, Plaintiff continued to experience right knee pain and Plaintiff underwent a right knee arthroscopy on November 21, 2018. On November 25, 2018, Plaintiff and his parents attended a meeting with fifteen (15) representatives of Penn State

2

University, who asked Plaintiff to sign a document voluntarily withdrawing himself from the football team. On December 30, 2018, Plaintiff was taken to the Emergency Room due to extreme knee pain and swelling. Plaintiff informed James Franklin on January 5, 2019 that his right knee was infected and Plaintiff underwent surgery to address the infection on January 8, 2019. On August 19, 2019, Plaintiff was removed from the Penn State football team.

Plaintiff originally filed a Complaint on January 31, 2020 based on a theory of medical malpractice. University Defendants filed Preliminary Objections on February 24, 2020. Plaintiff filed a Certificate of Merit for each Defendant on February 28, 2020, but failed to file a written statement from an appropriate licensed professional with the Certificates of Merit. All of the named Defendants other than the University Defendants filed a Notice of Intention to Enter Judgment of Non Pros for Failure to File a Written Statement from an Appropriate Licensed Professional between March 4 and March 11, 2020. Plaintiff filed an Answer to Defendants' Notices on April 17, 2020. On May 12 and May 13, 2020, the Centre County Prothonotary's Office entered Judgment of Non Pros in favor of all of the Defendants other than the University Defendants.

On June 1, 2020, Plaintiff filed a Petition for Relief of Judgment of Non Pros requesting the Court strike the judgments and restore Plaintiff's Complaint in its entirety. Between June 12 and June 22, 2020, each of the Defendants filed a Response seeking to uphold their Judgement of Non Pros. A hearing was held on June 25, 2020. On July 15, 2020, the Court entered an Opinion and Order denying Plaintiff's Petition for Relief, sustaining the University Defendants' Preliminary Objections, and dismissing Plaintiff's medical malpractice claims with prejudice. The Court dismissed Plaintiff's Complaint and allowed Plaintiff to file an Amended Complaint within twenty (20) days against only the University Defendants and only raising potential claims

3

of intentional or negligent infliction of emotional distress and ordinary negligence. Plaintiff filed a Petition for Reconsideration on July 24, 2020, which was denied by the Court on July 30, 2020.

Plaintiff filed an Amended Complaint on August 3, 2020, and a Supplemental Amended Complaint on August 12, 2020, both of which included claims against all of the Defendants from Plaintiff's original Complaint. Between August 7, 2020 and August 14, 2020, counsel for all of the Defendants except for the University Defendants sent letters to Plaintiff requesting that he remove them from his Amended Complaint or they would seek to hold Plaintiff in contempt of court. Plaintiff failed to respond and Defendant Lynch, Defendant Mount Nittany Health, Defendants Mutnan, Messina, Carr, Bream, and Sohns, and Defendants Seidenberg, Reid, Penn State Health, The Milton S. Hershey Medical Center, and Penn State Hershey Medical Group (collectively, "Petitioners") each filed a Petition to Hold Plaintiff in Contempt of Court.

On August 24, 2020, Plaintiff filed Notices of Intention to Enter Default Judgments against each of the Defendants because they allegedly failed to enter a written appearance and file in writing with the Court their defenses or objections to Plaintiff's Amended Complaint. University Defendants filed Preliminary Objections and a Brief in Support on August 31, 2020. Plaintiff filed a Praecipe for Default Judgment on September 2, 2020 against University Defendants for their alleged failure to enter a written appearance and file their defenses or objections. Plaintiff also filed a Praecipe for Determination on September 3, 2020 alleging University Defendants' Preliminary Objections were not filed in accordance with Pennsylvania law for failing to serve Plaintiff a copy of their Preliminary Objections. Plaintiff filed a Response in Opposition to University Defendant's Preliminary Objections on September 16, 2020, and an Answer to Order to Show Cause on October 9, 2020. Plaintiff also filed a Statement of Support on October 19, 2020. A hearing was held on October 12, 2020.

4

## Discussion

### I. Petitions for Contempt

In order for a party to be held in contempt, "the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and (3) the contemnor acted with wrongful intent." *Gunther v. Bolus*, 2004 PA Super 8, 853 A.2d 1014, 1017 (citing *Marian Shop, Inc. v. Baird*, 448 Pa.Super. 52, 670 A.2d 671, 673 (1996)). Petitioners' Petitions for Contempt are requesting that the Court hold Plaintiff in civil contempt for failing to comply with the Court's Orders of July 15, 2020 and July 30, 2020. "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. *Gunther*, 853 A.2d at 1018 (citing *Cecil Township v. Klements*, 821 A.2d 670, 675 (Pa.Commw.2003)). Here, Petitioners are seeking to compel performance and receive compensation for the losses Petitioners sustained in legal fees and expenses they incurred in pursuing a contempt order and their removal from the instant litigation.

"[I]n civil contempt proceedings the burden is on the complaining party to prove noncompliance by a preponderance of the evidence..." *Barrett v. Barrett*, 470 Pa. 253, 263, 368 A.2d 616, 621. Petitioners must show by a preponderance of the evidence that Plaintiff had notice of the Court's July 15th and July 30th Orders, purposely chose to violate the Orders, and acted with wrongful intent in violating the Orders. It is clear from the record that Plaintiff had actual notice of the July 15th Order as he filed a Petition for Reconsideration of the Order on July 24, 2020. Plaintiff also had actual notice of the July 30th Order as Plaintiff admits in his Supplemental Amended Complaint and in his Answer to Order to Show Cause that the Supplemental Amended Complaint was submitted in response to the July 30th Order in an

5

attempt to comply with that Order. As such, Plaintiff possessed actual knowledge of both of the Orders at issue here.

Petitioners allege Plaintiff declined to comply with the Court's July 15th and July 30th Orders when Plaintiff filed an Amended Complaint on August 3, 2020 naming Petitioners as defendants and asserting claims against Petitioners. Petitioners argue Plaintiff further refused to comply with the Court's Orders by filing a Supplemental Amended Complaint on August 12, 2020 with claims against Petitioners. Petitioners claim Plaintiff filed his Supplemental Amended Complaint even after receiving letters from counsel for Petitioners requesting Plaintiff remove Petitioners as defendants in compliance with the Court's Orders and informing Plaintiff that Petitioners would petition the Court to have Plaintiff held in contempt if Petitioners were not removed.

The Court's July 15, 2020 Order dismissed Plaintiff's Complaint and stated Plaintiff had twenty (20) days to file an Amended Complaint against only the University Defendants and only raising potential claims of intentional or negligent infliction of emotional distress and ordinary negligence. The rest of the claims in Plaintiff's Complaint, including medical malpractice claims, were dismissed with prejudice. The University Defendants were explicitly identified in the Order as The Pennsylvania State University, Sandy Barbour, Charmelle Green, and James Franklin. The Court's July 30, 2020 Order denied Plaintiff's Petition for Reconsideration and again stated Plaintiff could file an Amended Complaint raising claims of intentional or negligent infliction of emotional distress and ordinary negligence against only the University Defendants. The Court believes these were clear and concise orders stating Plaintiff could only raise particular claims against particular defendants, and instructing Plaintiff that he was permitted to bring claims against only the University Defendants, and not Petitioners.

In Plaintiff's Answer to Order to Show Cause, Plaintiff claims the Supplemental Amended Complaint complies with the Court's Orders. Plaintiff states he did not receive the Court's July 30, 2020 Order until August 6, 2020 so he filed the Amended Complaint before receiving the July 30th Order and filed the Supplemental Amended Complaint in response. Plaintiff argues the Supplemental Amended Complaint complies with the Court's Orders because it is a "Civil Action of Negligence and Vicarious Liability" against The Pennsylvania State University and The Pennsylvania State University – Known and Unknown Defendants, which Plaintiff identifies as the "University Defendants." Plaintiff states it was his understanding that "Known Defendants" must be identified by name in a complaint and Plaintiff named all of the Petitioners because at all relevant times Petitioners held multiple positions which made them agents, servants, employees, subsidiaries, affiliates, and/or independent contractors to/of the Pennsylvania State University. Plaintiff asserts the Court's Orders did not instruct Plaintiff to remove the names of specific defendants or the names of individuals alleged to have been negligent, but only ordered that Plaintiff could not pursue medical malpractice claims.

Plaintiff has attempted to expand the definition of the "University Defendants" identified by the Court in its Orders to include all of the named defendants from Plaintiff's original complaint. Plaintiff cannot bring claims against Petitioners simply by calling them "University Defendants" based on their connections to the Pennsylvania State University. The Court explicitly stated Plaintiff could bring specific claims against only the University Defendants and expressly identified the University Defendants as The Pennsylvania State University, Sandy Barbour, Charmelle Green, and James Franklin. The Court's Orders were clear and unambiguous. Plaintiff's interpretation does not conform to the plain meaning of the Orders. The Amended Complaint and the Supplemental Amended Complaint are both in violation of the

7

Court's Orders. Therefore, the second element required for a finding of contempt is satisfied as Plaintiff voluntarily filed the Amended Complaint and the Supplemental Amended Complaint in violation of the Court's Orders.

For Plaintiff to be held in contempt, Petitioners must show Plaintiff acted with wrongful intent. Petitioners did not offer any direct evidence that Plaintiff acted with wrongful intent, however, a party's wrongful intent can often be "inferred from circumstantial evidence." *Waggle v. Woodland Hills Ass'n, Inc.*, 213 A.3d 397, 403 (Pa.Cmwlth. 2019). Plaintiff's wrongful intent "can be inferred where it is clear from the language of the court order that the conduct in question violates the court order and the evidence shows that the contemnor knowingly failed to comply." *Id.* at 404. "[W]hen making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order." *Commonwealth v. Reese*, 2017 PA Super 47, 156 A.3d 1250, 1258.

Here, Plaintiff's wrongful intent can be inferred based on the circumstances of Plaintiff's actions. It is clear from the language of the Court's Orders that Plaintiff's filings would violate the Court's Order. There was a substantial certainty that Plaintiff's actions in filing claims against the Petitioners would violate the Court's Orders. Not only did the Court's Orders expressly state Plaintiff could only file claims against University Defendants, but Plaintiff also received multiple letters from Petitioners informing him his Amended Complaint was in violation of the Court's July 15, 2020 Order. Even after the Court's Orders of July 15, 2020 and July 30, 2020 and the letters from Petitioners, Plaintiff still filed a Supplemental Amended Complaint stating claims against Petitioners. Based on the evidence, Plaintiff knowingly failed to comply with the Court's Orders and acted with wrongful intent.

8

Plaintiff had actual notice of the Court's Orders he disobeyed, Plaintiff's acts constituting the violations were volitional, and Plaintiff acted with wrongful intent. Therefore, the Court concludes that Plaintiff's conduct in filing the Amended Complaint and the Supplemental Amended Complaint was in violation of the clear mandates of the aforementioned Orders. Accordingly, Petitioner's Petitions to Hold Plaintiff in Contempt of Court are **GRANTED**. However, the Court will not award sanctions and attorney's fees to Petitioners, but will **DISMISS** Plaintiff's claims against Petitioners in his Amended Complaint and Supplemental Amended Complaint.

## II. Plaintiff's Praecipe for Default Judgment and Praecipe for Determination

Plaintiff filed a Praecipe for Default Judgment on September 2, 2020 and a Praecipe for Determination on September 3, 2020. In Plaintiff's Praecipe for Default Judgment, Plaintiff requested the Court enter judgment in favor of Plaintiff and against the University Defendants for failure to enter a written appearance and file in writing with the Court their defenses or objections to the claims set forth in Plaintiff's Supplemental Amended Complaint. In Plaintiff's Praecipe for Determination, Plaintiff requested the Court dismiss University Defendants' Preliminary Objections and Brief in Support and enter default judgment in Plaintiff's favor because University Defendants' Preliminary Objections were not filed or served in accordance with Pennsylvania law. Plaintiff claims the Preliminary Objections were not properly served on Plaintiff and University Defendants failed to state the date of service and certify the date and manner of service. Plaintiff alleges University Defendants failed to file within the required time and did not provide Plaintiff with a notice to defend.

University Defendants filed their Preliminary Objections with the Court on August 31, 2020, within the time required for filing. In their Preliminary Objections, University Defendants

9

included a Notice to Plead and a Certificate of Service stating the Preliminary Objections had been served upon Plaintiff via Electronic Mail and First Class U.S. Mail. University Defendants' filing of their Preliminary Objections and Brief in Support did not violate the Pennsylvania Rules of Civil Procedure or any other Pennsylvania law. University Defendants' service of process was proper under Pa.R.C.P. 403 and 404. Plaintiff resides outside of the Commonwealth and likely had yet to receive a copy of the filings in the mail at the time Plaintiff filed his Praecipe for Default Judgment and Praecipe for Determination.

Accordingly, Plaintiff's Praecipe for Default Judgment and Praecipe for Determination are **DENIED.**

### III. The University Defendants' Preliminary Objections

The University Defendants raise preliminary objections seeking to dismiss Plaintiff's Supplemental Amended Complaint because of improper service of a writ of summons and a complaint pursuant to Pa.R.C.P. 1028(a)(1); failure to conform to law or rule of court pursuant to Pa.R.C.P. 1028(a)(2); and legal insufficiency of a pleading (demurrer) pursuant to Pa.R.C.P. 1028(a)(4).

#### A. Improper Service

The Pennsylvania Rules of Civil Procedure require services of process on a corporation or similar entity be made by a sheriff, by handing a copy of the writ to an officer, person-in-charge, or authorized agent. *See* Pa.R.C.P. 424. The Pennsylvania Rules of Civil Procedure also require service of process on an individual be made by a sheriff, by handing a copy to the individual, an adult residing at the individual's residence, or to an agent or person-in-charge of the individual's usual place of business. *See* Pa.R.C.P. 402. In this case, Plaintiff has served the Writ of Summons on the University Defendants via certified mail and the Supplemental

10

Amended Complaint via email. Plaintiff has failed to effectuate proper service of process on the University Defendants. Accordingly, the University Defendants' Preliminary Objection based on improper service pursuant to Pa.R.C.P. 1028(a)(1) is **SUSTAINED**.

### B. Failure to Conform to Law or Rule of Court

Pa.R.C.P. 1028(a)(2) provides for preliminary objections when a pleading fails to conform to law or rule of court. University Defendants argue most of the claims raised in Plaintiff's Supplemental Amended Complaint are impermissible claims and claims already dismissed with prejudice. University Defendants assert these claims violate the Court's July 15, 2020 Order, which dismissed a number of Plaintiff's claims and stated Plaintiff could only raise claims for intentional or negligent infliction of emotional distress and ordinary negligence in any amended complaint. University Defendants allege eighteen (18) of Plaintiff's twenty-one (21) claims raised in the Supplemental Amended Complaint are precluded by the Court's Order. Plaintiff also challenges these claims as legally insufficient pursuant to Pa.R.C.P. 1028(a)(4).

University Defendants assert Plaintiff's claims of Violation of Pennsylvania Law of Negligent Performance (Count II), Negligence – Ostensible Agency/Restatement (Second) Tort (Count IV), Negligence – Informed Consent (Count V), Negligence – Misrepresentation (Count VI), Negligence Hospital-Acquired Infection (Count VII), Misfeasance/Malfeasance (Count VIII), Loss of Chance (Count IX), Negligence - Entity/Physician-Patient Relationship (Count X), Negligence – Supervision (Count XI), Negligence – Failure to Pay Medical Expenses (Count XII), Fraud (Count XV), Negligence – Professional (Count XVI), and Negligence Per Se (Count XXI) are all attempts by Plaintiff to couch his medical malpractice claims as some type of negligence claim. In addition to the aforementioned claims, University Defendants also maintain that Plaintiff's claims of Breach of Duty/Fiduciary Duty (Count I), Battery (Count XVII), False

11

Imprisonment (Count XVIII), Concerted Tortious Conduct (Count XIX), and Violation of Pennsylvania Anti-Hazing Law (Count XX) are barred by the Court's Order. This Court agrees.

Counts II, IV, V, VI, VII, VIII, IX, X, XI, XII, XV, XVI, and XXI are all based on Plaintiff's medical care and treatment. Each claim mentions and accuses one of the dismissed parties of negligence in Plaintiff's medical treatment. Claims of negligent medical care and treatment are medical malpractice claims. All of Plaintiff's medical malpractice claims were dismissed in the Court's July 15, 2020 Order. Plaintiff cannot now assert medical malpractice claims by simply referring to them as negligence claims. Many of these claims are variations of claims already dismissed by the Court or are not standalone causes of actions recognized in the Commonwealth.

Violation of Pennsylvania Law of Negligent Performance (Count II) avers multiple alleged violations of Restatement (Second) of Torts based on the conduct of Defendant Sohns, but does not specify how any actions by the University Defendants violated any section of the Restatement. Violations of the Restatement can be alleged in an attempt to establish negligence generally, but there is no separate cause of action for violation of Pennsylvania law of negligent performance. Negligence – Ostensible Agency/Restatement (Second) Tort (Count IV) is also based on medical care and treatment Plaintiff received from the dismissed defendants. Count IV states University Defendants had a duty to exercise reasonable care to select a contractor and a duty to ensure the safe performance of medical related services, but does not state how University Defendants breached these duties. Count IV is essentially alleging vicarious liability against University Defendants for Plaintiff's medical treatment by dismissed defendants. Negligence – Supervision (Count XI) asserts University Defendants failed to provide proper supervision while Plaintiff was being treated, failed to properly instruct and warn of possible

12

risks, and, therefore, University Defendants are vicariously liable for negligent acts by dismissed defendants during Plaintiff's treatment. Counts II, IV, and XI are not recognized causes of action, but may go towards establishing elements of Plaintiff's ordinary negligence claim (Count III).

Negligence – Informed Consent (Count V), Negligence Hospital-Acquired Infection (Count VII), and Negligence - Entity/Physician-Patient Relationship (Count X) are plainly claims of medical malpractice being restated as negligence claims. Loss of Chance (Count IX) is typically applied in medical malpractice cases. Here, the Loss of Chance claim alleges Plaintiff would have had a substantial opportunity of avoiding additional injury and treatment if University Defendants had correctly diagnosed and treated the infection. Plaintiff's diagnosis is an issue directly related to Plaintiff's medical treatment. University Defendants were not involved in the diagnosis or treatment of Plaintiff. Plaintiff cannot bring medical malpractice claims against University Defendants.

Negligence – Misrepresentation (Count VI) and Fraud (Count XV) allege University Defendants misrepresented, concealed, and interfered with medical information provided to Plaintiff. Both of these claims are medical malpractice claims dealing with Plaintiff's reliance on medical information received from dismissed defendants and are similar to Plaintiff's previously dismissed civil conspiracy claim. Negligence – Professional (Count XVI) is the same claim as the professional malpractice and professional misconduct claims the Court already dismissed. Plaintiff's Negligence Per Se claim (Count XXI) fails to identify which statute University Defendants allegedly violated and simply states their actions were inherently negligent. Misfeasance/Malfeasance (Count VII) is not recognized in Pennsylvania as a cause of action. *See Greco v. Senchak*, CIV.A. 3:12-2576, 2013 WL 4520847, at *6 (M.D. Pa. Aug. 26, 2013),

13

amended on reconsideration in part, CIV.A. 3:12-2576, 2013 WL 5755214 (M.D. Pa. Oct. 23, 2013) (stating "Pennsylvania law does not recognize such a [Misfeasance/Malfeasance] claim, it appears that plaintiff is merely using these words as synonyms for negligence…").

Concerted Tortious Conduct (Count XIX) is essentially a civil conspiracy claim which was previously dismissed with prejudice by the Court's Order. There is no factual basis to support Counts I, XVII, XVIII, and XX. Breach of Duty would go toward establishing negligence, but is not its own cause of action. Breach of Fiduciary Duty has not been established by Plaintiff. Plaintiff also failed to establish causes of action based on battery, false imprisonment, and violation of Pennsylvania's Anti-Hazing Law, 18 Pa.C.S.A. § 2801, et seq. These claims are also outside of the claims Plaintiff was specifically told he could bring in an amended complaint in the Court's July 15, 2020 Order.

Plaintiff did not aver facts establishing there was an offensive contact by any of the University Defendants which would constitute battery. *See* Restatement (Second) of Torts § 18 (1965). Plaintiff also failed to aver facts establishing false imprisonment as University Defendants did not confine Plaintiff within boundaries fixed by the University Defendants simply because they did not provide Plaintiff with transportation to a medical appointment. *See* Restatement (Second) of Torts § 35 (1965). University Defendants told Plaintiff that he could see any medical professional he chose, but he would have to transport himself to those appointments. University Defendants offered to reimburse any transportation costs. There is also insufficient facts alleged to establish a violation of Pennsylvania's anti-hazing law as University Defendants did not cause, coerce or force Plaintiff to violate federal or state criminal law, to consume anything, or to endure brutality of a physical, mental, or sexual nature for the purpose of initiating or continuing Plaintiff's membership in an organization. *See* 18 Pa.C.S.A. § 2802.

14

All of the aforementioned claims violate the Court's July 15, 2020 Order which stated Plaintiff was only permitted to bring claims based on intentional and negligent infliction of emotional distress as well as ordinary negligence. Other than Plaintiff's claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, all of the claims contained in the Supplemental Amended Complaint are claims previously dismissed with prejudice by the Court. Plaintiff's Supplemental Amended Complaint fails to conform to the Court's Order. Accordingly, the University Defendants' Preliminary Objection based on failure to conform to law or rule of court pursuant to Pa.R.C.P. 1028(a)(2) is **SUSTAINED**.

## C. Legal Insufficiency (Demurrer)

Pa.R.C.P. 1028(a)(4) provides for preliminary objections when a pleading is legally insufficient. A demurrer tests whether, based on the facts averred, recovery is possible under the law. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 274 (2005). In considering preliminary objections based on demurrer, "all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Albert v. Erie Ins. Exchange*, 2013 PA Super 59, 65 A.3d 923, 930-31 (citing *Feingold v. Hendrzak*, 2011 PA Super 34, 15 A.3d 937, 941). A court is not required to accept conclusions of law, unwarranted inferences, allegations, or expressions of opinion set forth in the pleadings when ruling on preliminary objections. *Bayada Nurses, Inc. v. Com., Dept. of Labor and Industry*, 607 Pa. 527, 8 A.3d 866 (2010). A court must view all evidence and facts in a light most favorable to the non-moving party. *Nutrition Mgmt. Servs. Co. v. Hinchcliff*, 2007 PA Super 167, 926 A.2d 531, 535. If there is any doubt as to whether a demurrer is appropriate, the doubt must be resolved in favor of overruling the demurrer. *Theodore v. Delaware Valley School Dist.*, 575 Pa. 321, 836 A.2d 76 (2003).

15

University Defendants argue Plaintiff's claims of negligence, negligent infliction of emotional distress and intentional infliction of emotional distress fail as a matter of law. University Defendants allege Plaintiff's claims are either insufficiently pled or inapplicable to the University Defendants. University Defendants assert Plaintiff's claim for ordinary negligence fails because it is nothing more than a medical malpractice claim, Plaintiff cannot maintain a vicarious liability action against Penn State, and Plaintiff cannot establish the necessary elements for any negligence claim. University Defendants allege Plaintiff's inability to establish a negligence claim means Plaintiff cannot establish a claim for negligent infliction of emotional distress. Finally, University Defendants claim Plaintiff's cause of action for intentional infliction of emotional distress also fails because Plaintiff did not allege sufficiently outrageous and extreme conduct which would allow him to recover.

### 1. Negligence

To establish a negligence claim, Plaintiff must prove there is a "breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." *Bilt-Rite Contractors, Inc.*, 866 A.2d at 280 (quoting *Sharpe v. St. Luke's Hospital*, 573 Pa. 90, 821 A.2d 1215, 1218 (2003)); see *Wittrien v. Burkholder*, 2009 PA Super 23, 965 A.2d 1229, 1232 ("In any negligence case, the plaintiff must prove duty, breach, causation and damages."). Plaintiff asserts University Defendants assumed a duty to Plaintiff when they entered into an agreement for him to join the Penn State football program on an athletic scholarship. Plaintiff argues University Defendants' affirmative conduct made them responsible for the health and safety of Plaintiff and established a fiduciary duty owed to Plaintiff. Plaintiff alleges University Defendants had a duty to care for and protect Plaintiff as well as provide a safe environment and implement precautions to reduce risks of harm. Plaintiff

16

contends University Defendants breached their duty owed to Plaintiff by recklessly ignoring their duty and this caused Plaintiff's medical and financial damages.

The Court finds that Plaintiff's negligence claim is nothing more than a medical malpractice claim against University Defendants. All of Plaintiff's allegations against University Defendants concern alleged damages Plaintiff suffered in connection to his medical treatment and care. Count III specifically alleges University Defendants' negligence includes the failure to examine properly and diagnose his medical condition, failure to provide, recommend, and refer Plaintiff for appropriate diagnostic study, care, consultation, and treatment, failure to properly recommend appropriate follow-up with patient, and failure to properly monitor Plaintiff's progress. The alleged damages include the delay in the diagnosis and treatment of the infection in Plaintiff's knee which rendered him no longer able to participate in football. As the Court stated in its July 15, 2020 Opinion and Order, University Defendants are not medical providers and cannot be held liable for medical malpractice. Plaintiff cannot maintain his ordinary negligence claim against University Defendants since it is, in fact, a medical malpractice claim.

Plaintiff claims the Pennsylvania State University is vicariously liable for negligence because its agents, servants, employees, subsidiaries, affiliates, and/or independent contractors were negligent in providing medical treatment. Plaintiff asserts the Pennsylvania State University does business as Penn State Health, the Milton S. Hershey Medical Center, and Penn State Hershey Medical Group as well as affiliates with Mount Nittany Health. However, all of Plaintiff's medical malpractice claims against those other entities and agents were dismissed for failure to file a proper certificate of merit so the Penn State University cannot be held vicariously liable for their alleged malpractice.

17

"[A]bsent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal." *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 221, 560 A.2d 1380, 1383 (1989). "A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor." *Id.* Here, Plaintiff failed to aver facts showing an affirmative act or failure to act on the part of the University Defendants which would support his negligence claim. The termination of the claims against the other defendants in this case extinguishes the vicarious liability claim against University Defendants.

Even if Plaintiff's claims were actually negligence claims and not medical malpractice claims, Plaintiff has failed to aver facts which could establish University Defendants are liable under a negligence claim directly. Plaintiff argues there is a "special relationship" between University Defendants and Plaintiff due to the fact that Plaintiff is a student-athlete recruited by the University and given a scholarship to play football. Plaintiff claims the University Defendants have an *in loco parentis* duty. University Defendants assert there is no "special relationship" or *in loco parentis* duty imposed on them, and, therefore, they cannot be held liable under a negligence claim.

"The phrase '*in loco parentis*' refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." *Peters v. Costello*, 586 Pa. 102, 110–11, 891 A.2d 705, 710 (2005). In the past, Pennsylvania courts were willing to impose an *in loco parentis* duty on colleges and universities; however, "in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university." *Alumni Ass'n v. Sullivan*, 524 Pa. 356, 364, 572 A.2d 1209, 1213 (1990). "[T]he modern American college is not an insurer of the safety of its student.

18

Whatever may have been its responsibility in an earlier era, the authoritarian role of today's college administrations has been notably diluted in recent decades." ***Bradshaw v. Rawlings***, 612 F.2d 135, 138 (3d Cir. 1979). "[T]he principle of *in loco parentis* appears no longer to apply to college students." ***Am. Future Sys., Inc. v. Pennsylvania State Univ.***, 553 F.Supp. 1268, 1282 (M.D. Pa. 1982). Although there is no *in loco parentis* duty, that does not mean there is no duty on universities whatsoever, especially in cases involving student-athletes recruited by the university to play intercollegiate sports.

In *Kleinknecht v. Gettysburg College*, the Third Circuit found a "College owed [plaintiff] a duty of care in his capacity as an intercollegiate athlete engaged in school-sponsored intercollegiate athletic activity for which he had been recruited." ***Kleinknecht v. Gettysburg Coll.***, 989 F.2d 1360, 1369 (3d Cir. 1993). The court stated "a special relationship existed between the College and [plaintiff] that was sufficient to impose a duty of reasonable care on the College." *Id.* at 1367. "[T]he College had a duty to provide prompt and adequate emergency medical services to [plaintiff], one of its intercollegiate athletes, while he was engaged in a school-sponsored athletic activity for which he had been recruited. *Id.* at 1371. The Pennsylvania Supreme Court has also held that universities have a "duty of care to its intercollegiate student athletes ... to have qualified medical personnel available at [intercollegiate athletic events], and to provide adequate treatment in the event that an intercollegiate student athlete suffered a medical emergency." ***Feleccia v. Lackawanna Coll.***, 215 A.3d 3, 10 (Pa. 2019).

University Defendants had a duty to exercise reasonable care to protect Plaintiff against unreasonable risk of harm. This included a duty "to provide duly licensed athletic trainers for the purpose of rendering treatment to its student athletes participating in athletic events." *Id.* at 15. Although the Court finds University Defendants owed a duty to Plaintiff by virtue of his status as

19

a student-athlete who was recruited by Penn State University and participated in intercollegiate athletic events on behalf of Penn State University, Plaintiff's negligence still fails to survive University Defendants' Preliminary Objections.

Plaintiff has failed to aver facts evidencing a breach of the duty owed by University Defendants. In *Kleinknecht*, the college failed to have prompt and adequate medical services available at a school-sponsored athletic event when plaintiff suffered a fatal heart attack at lacrosse practice with no athletic trainers present or means of quickly obtaining emergency services. *See **Kleinknecht***, 989 F.2d 1360. In *Feleccia*, the college failed to have qualified medical personnel (certified or licensed athletic trainers) available to provide medical treatment at a football practice. *See **Feleccia***, 215 A.3d 3. In both cases, the colleges breached their duty by failing to ensure qualified medical personnel was available to provide medical treatment during athletic events.

Here, University Defendants exercised reasonable care in ensuring Plaintiff received proper medical treatment. Plaintiff has not alleged University Defendants failed to provide prompt and adequate medical services at athletic events or failed to have qualified medical personnel available to provide medical treatment. In fact, the medical history averred by Plaintiff shows University Defendants had multiple qualified and licensed medical professionals and athletic trainers tend to Plaintiff's medical needs. University Defendants did not fail to have qualified medical personnel available, deny Plaintiff medical care or interfere with his treatment. University Defendants referred Plaintiff to qualified physicians, athletic trainers, and medical providers.

There is no special relationship in this case which would impose a duty greater than reasonable care. University Defendants did not breach their duty to ensure qualified medical

20

personnel were available to render medical assistance and Plaintiff failed to aver facts showing University Defendants failed to exercise reasonable care. There were very few factual allegations pertaining to University Defendants as Sandy Barbour, Charmelle Green, and James Franklin are hardly mentioned in Plaintiff's Supplemental Amended Complaint. Instead, the great majority of Plaintiff's pleadings focus solely on the actions of the defendants already dismissed from this action. Plaintiff's pleadings fail to establish a breach of the duty University Defendants owed to Plaintiff, and, therefore, Plaintiff's negligence claim against University Defendants is insufficient as a matter of law.

## 2. Negligent Infliction of Emotional Distress

University Defendants' Preliminary Objections argue Plaintiff's negligent infliction of emotional distress ("NIED") claims are insufficient as a matter of law and must be dismissed. Pennsylvania courts have limited a cause of action based on NIED to four theories of recovery. In order to recover, a plaintiff must prove one of four theories: (1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty (the special relationship rule); (2) the plaintiff suffered a physical impact (the impact rule); (3) the plaintiff was in a "zone of danger" and reasonably experienced a fear of immediate physical injury (the zone of danger rule); or (4) the plaintiff observed a tortious injury to a close relative (the bystander rule). *See Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 2000 PA Super 6, 745 A.2d 25, 27, aff'd, 564 Pa. 264, 767 A.2d 548 (2001). In this case, Plaintiff has failed to establish a right to recovery under any of these theories of liability.

"[A]bsent a finding of negligence, [a] negligent infliction of emotional distress claim cannot survive." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000) (citing *J.E.J. v. Tri-Cty. Big Bros./Big Sisters, Inc.*, 692 A.2d 582, 586 (Pa. Super. Ct.

21

1997)). Given that Plaintiff has failed to establish a claim of negligence, Plaintiff's negligent infliction of emotional distress also fails. Plaintiff cannot recover under the bystander theory as he did not observe a tortious injury to a close relative. Plaintiff cannot recover under the zone of danger theory as he did not aver facts alleging he experienced a fear of immediate physical impact, rather Plaintiff alleges a special relationship existed between the parties and he suffered a physical impact due to University Defendants' negligence.

Plaintiff cannot recover under the special relationship theory because it requires him to establish University Defendants acted negligently by breaching a duty owed to Plaintiff. Plaintiff would also have to show negligence to recover under the impact rule. Recovery is available under the impact rule only "where a plaintiff sustains bodily injuries... accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff..." *Brown v. Philadelphia Coll. of Osteopathic Med.*, 449 Pa.Super. 667, 679, 674 A.2d 1130, 1135–36 (1996). Plaintiff has failed to establish University Defendants' negligence as he cannot show that University Defendants breached a duty they owed to Plaintiff. As a result of Plaintiff's failure to establish a negligence claim against University Defendants, Plaintiff's claim for negligent infliction of emotional distress is insufficient as a matter of law.

### 3. Intentional Infliction of Emotional Distress

Count XIV of Plaintiff's Supplemental Amended Complaint is based on a cause of action of intentional infliction of emotional distress ("IIED"). The four elements Plaintiff must show to establish this claim are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Madreperla v. Williard Co.*, 606 F.Supp. 874, 879–80 (E.D. Pa. 1985) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979)). For an IIED claim to

22

survive a preliminary objection, a "court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Id.* The conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rinehimer v. Luzerne Cty. Cmty. Coll.*, 372 Pa.Super. 480, 494-95, 539 A.2d 1298, 1305 (1988); *see* Restatement (Second) of Torts § 46, comment d (1965).

Plaintiff claims University Defendants' extreme and outrageous conduct was that they knew or should have known of tortious conduct yet allowed it to happen or did nothing about it in reckless disregard of Plaintiff's health and rights. During the hearing on October 12, 2020, Plaintiff pointed to the failure to correctly diagnose the infection in his knee after the CT scan in September 2018 as extreme and outrageous conduct. University Defendants argue Plaintiff has barely alleged any conduct by the University Defendants, let alone conduct which could rise to the level of outrageous or extreme conduct. University Defendants assert Plaintiff failed to allege how any actions by the University Defendants caused his injuries. University Defendants claim all the charged actions which caused his injuries relate to his medical care and are wholly unrelated to University Defendants.

While Pennsylvania recognizes the cause of action for IIED, courts "have allowed recovery in only very egregious cases" *Hoy v. Angelone*, 456 Pa.Super. 596, 610, 691 A.2d 476, 482 (1997), as modified, 456 Pa.Super. 615, 691 A.2d 485 (1997), and aff'd, 554 Pa. 134, 720 A.2d 745 (1998), and aff'd, 554 Pa. 134, 720 A.2d 745 (1998). Based on the facts averred by Plaintiff in this case, University Defendants' conduct does not rise to the level necessary to allow for recovery under a claim of IIED. Defendant Barbour was only brought up in Plaintiff's factual allegations once when a coach mentioned her name. The only factual allegations against

23

Defendant Green relate to her denial of the University transporting Plaintiff to a physical therapy session, but offering to reimburse the costs of an Uber if Plaintiff's parents were unable to transport him. There were also very few factual allegations against Defendant Franklin and those centered around the University's offer of a scholarship, emails from Plaintiff's parents to Defendant Franklin, and Plaintiff's withdrawal from and return to the football team. None of these allegations aver facts establishing University Defendants' conduct was extreme or outrageous. No factual allegations show University Defendants were involved in medical diagnoses, medical decisions, or medical treatment.

Plaintiff has failed to allege sufficient facts to show University Defendants' conduct was extreme and outrageous. Plaintiff cannot satisfy all of the elements necessary to establish a claim of intentional infliction of emotional distress, and, therefore, Plaintiff's intentional infliction of emotional distress claim is legally insufficient.

Accordingly, University Defendants' Preliminary Objections to Plaintiff's claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress pursuant to Pa.R.C.P. 1028(a)(4) are **SUSTAINED**.

## ORDER

AND NOW, this ⸍⸍ᵗʰday of December, 2020, the Court ORDERS as follows:

1. Defendant Scott A. Lynch, Defendants Andy Mutnan, Renee Messina, Brendan Carr, Tim Bream, and Wes Sohns, Defendants Peter H. Seidenberg, M.D., John S. Reid, M.D., Penn State Health, The Milton S. Hershey Medical Center, and Penn State Hershey Medical Group, and Defendant Mount Nittany Health's ("Petitioners") Petitions to Hold Plaintiff in Contempt of Court are **GRANTED** and all of Plaintiff's

24

claims against Petitioners in his Amended Complaint and Supplemental Amended Complaint are **DISMISSED** with prejudice.

2. Plaintiff's Praecipe for Default Judgment and Praecipe for Determination are **DENIED**.

3. Defendants The Penn State University, Sandy Barbour, Charmelle Green, and James Franklin's ("University Defendants") Preliminary Objections to Plaintiff's Supplemental Amended Complaint pursuant to Pa.R.C.P 1028(a)(1), 1028(a)(2), and 1028(a)(4) are **SUSTAINED**.

4. Counts I through XXI are **DISMISSED** with prejudice.

5. Plaintiff's Supplemental Amended Complaint is **DISMISSED** with prejudice.

BY THE COURT:

Pamela A. Ruest, President Judge

25