J-S48031-19

2019 PA Super 327

LAURA PANKOE,                          :    IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
                                       :
              Appellee                 :
                                       :
       v.                              :
                                       :
                                       :
RYAN PANKOE,                           :    No. 1041 EDA 2019

              Appellant

              Appeal from the Decree Entered March 25, 2019
               In the Court of Common Pleas of Lehigh County
                 Civil Division at No(s):  2017-FC-1286

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:          **FILED OCTOBER 29, 2019**

       Ryan Pankoe (Husband) *pro se* appeals from the March 25, 2019 divorce

decree entered in the Lehigh County Court of Common Pleas.  Upon review,

we affirm.

       Husband and Laura Pankoe (Wife) were married on October 18, 2009,

in Lehigh County, Pennsylvania, and are the parents to two minor children.

On September 27, 2017, Wife filed a complaint for divorce (the Complaint),

which included a count for equitable distribution.  Complaint, 9/27/2017.  In

the Complaint, Wife averred the parties separated on November 8, 2016, and

had been living apart since that date.  *Id.* at 2 (unnumbered). Additionally,

Wife asserted that the marriage was irretrievably broken.  *Id.*  Thereafter,

Husband was served a copy of the Complaint, and he subsequently filed an

_____

[*] Retired Senior Judge assigned to the Superior Court.

answer. Therein, Husband requested the trial court dismiss the Complaint, asserting the marriage was "not irretrievabl[y] broken nor ha[d] the parties lived separate and apart for one year since the filling of the [] Complaint." Answer to Complaint, 3/1/2018, at 2 (unnumbered).

On November 27, 2018, a master's hearing was held before John Roberts, III, Esquire (Master). Both parties testified at the hearing. As summarized by the trial court:

> [Wife] testified that she believed her marriage to [Husband] is irretrievably broken because:
>
>> [Husband] is emotionally and verbally abusive and that's not going to change. He is narcissistic. We tried marriage counseling. And it's clear to me that I'm not going to get through to him.
>>
>> And his personality is the way it is. And I'm not going to keep putting myself in the situation I've been in. I'm done.
>
> [Wife] testified that she had "no doubt whatsoever" that she wanted a divorce. [Wife] further testified that she felt [Husband] was emotionally, verbally, and sexually abusive during the marriage. [Wife] also testified that [Husband] did not acknowledge her opinions and feelings during the marriage. [Wife] further testified that based on her religious beliefs, she believed a divorce was warranted. Additionally, [Wife] testified that she is not pursuing any economic claims against [Husband]. [Wife] testified that she did not have an affair during the marriage.
>
> [Husband] testified extensively about his religious beliefs and his belief that divorce is not appropriate for the parties. [Husband] testified that he did not believe the parties had "biblical grounds for divorce or infidelity or an unbelieving spouse walk away." [Husband] further argued that he and [Wife] entered into a Christian marriage contract, which Pennsylvania cannot invalidate. [Husband] argued that Pennsylvania recognizes that marriage is a religious contract and that Pennsylvania gives

deference to the religious aspects of marriage contracts. [Husband] contends that the legislature does not have the authority to regulate marriage and divorce, especially no-fault divorce, because there is no compelling state interest.

[Husband] further testified that his "firmly held religious beliefs prevented [him] from starting a family under a marital contract that includes an exit plan option of unilateral no-fault divorce." [Husband] also argued that Pennsylvania courts do not have jurisdiction over the Christian marriage contract between him and [Wife] and that [23 Pa.C.S. §] 3301(d)[(section 3301(d))[1]] fosters excessive governmental entanglement with the

_____

[1] Section 3301(d) of the divorce code sets forth the requirements necessary to obtain a unilateral no-fault divorce. Specifically, section 3301(d) provides:

(1) The court may grant a divorce where a complaint has been filed alleging that the marriage is irretrievably broken and an affidavit has been filed alleging that the parties have lived separate and apart for a period of at least one year and that the marriage is irretrievably broken and the defendant either:

(i) Does not deny the allegations set forth in the affidavit.

(ii) Denies one or more of the allegations set forth in the affidavit but, after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least one year[1] and that the marriage is irretrievably broken.

(2) If a hearing has been held pursuant to paragraph (1)(ii) and the court determines that there is a reasonable prospect of reconciliation, then the court shall continue the matter for a period not less than 90 days nor more than 120 days unless the parties agree to a period in excess of 120 days. During this period, the court shall require counseling as provided in section 3302 (relating to counseling). If the parties have not reconciled at the expiration of the time period and one party states under oath that the marriage is irretrievably broken, the court shall determine whether the marriage is irretrievably broken. If the court determines that the marriage is irretrievably broken, the court

free exercise of religion. [Husband] further testified that he believed his church council needs to determine if there is sufficient estrangement between the parties, and issue some type of edict stating that the marriage is beyond repair.

At the conclusion of [Husband's] testimony, [Wife] stated that the statements made by [Husband] were "a huge example of abuse." [Wife] testified that [Husband's] promises to change did not sway her and that she still wants a divorce.

Trial Court's Memorandum Opinion, 3/25/2019, at 3-5 (citations omitted). On December 6, 2018, the Master filed a report, recommending the trial court "grant the divorce expeditiously." *Id.* at 2.

On December 24, 2018, [Husband] filed exceptions to the [Master's report]. On December 28, 2018, [Husband] filed a statement "challenging subject matter jurisdiction amended." On January 7, 2019, [Husband] filed a notice of challenging constitutionality to Attorney General. On January 18, 2019, [Husband] filed a motion for summary judgment and brief in support. On February 15, 2019, [Wife] filed a brief *contra* to [Husband's] motion for summary judgment.

On February 22, 2019, [Husband] filed a reply brief to [Wife's] brief opposing motion for summary judgment. On February 27, 2019, th[e trial c]ourt held argument on the exceptions to the [Master's report] and the motion for summary judgment[.]

*Id.* at 2-3 (unnecessary capitalization omitted).

On March 25, 2019, the trial court issued a memorandum opinion in which it, *inter alia*, found Wife established grounds for divorce under section

shall grant the divorce. Otherwise, the court shall deny the divorce.

Section 3301(d)(1-2).

- 4 -

3301(d) and issued a divorce decree that same day.[2]  **See** Trial Court's Memorandum Opinion, 3/25/2019.  This timely-filed appeal followed.[3]

"Our standard of review in divorce actions is well settled. It is the responsibility of this court to make a *de novo* evaluation of the record of the proceedings and to decide independently of the ... lower court whether a legal cause of action in divorce exists." **Rich v. Acrivos**, 815 A.2d 1106, 1107 (Pa. Super. 2003) (citation, brackets and quotation marks omitted).

On appeal, Husband is not disputing that, under section 3301(d), Wife has met her burden in proving that a legal cause of action in divorce exists. **See** Husband's Brief at 27 ("[H]usband is not disputing the presence of the jurisdictional facts as defined by the statute[.]").  **See also** Husband's Reply Brief at 10 ("[H]usband does not dispute the fulfillment of the statutory elements[.]").  Instead, Husband is arguing that section 3301(d) is

_____

[2] Although not pertinent to the disposition of this appeal, in its memorandum opinion, the trial court also denied Husband's motion for summary judgment, and granted in part, and denied in part, Husband's exceptions to the Master's report.  Specifically, the trial court granted two of Husband's exceptions, which corrected minor errors made in the Master's report's recitation of facts.  **See** Trial Court's Memorandum Opinion, 3/25/2019.

[3] Husband complied with the trial court's request to file a concise statement and in response, the court submitted an order stating it believes its March 25, 2019 memorandum opinion sufficiently addressed all the issues raised by Husband and thus, the court would rely on that opinion for the purposes of this appeal.  **See** Order, 5/22/2019.

unconstitutional because it violates the Establishment Clause[4] and Husband's

due process rights. *Id.* at 11-12.

> When an appellant challenges the constitutionality of a statute, he or she presents this Court with a question of law. Our consideration of questions of law is plenary.
>
> Properly enacted legislation is presumed constitutional. The burden of persuasion to show constitutional infirmity rests heavily on the appellant. Our Supreme Court instructs this Court to pronounce a statute unconstitutional only when we find that it clearly, palpably and plainly violates the constitution.

*Commonwealth v. Atwell*, 785 A.2d 123, 125 (Pa. Super. 2001) (citations

and quotation marks omitted).

As an initial matter, we note that the argument section of Husband's

brief is difficult to follow and incoherent at times. Nevertheless, we will

attempt to discern Husband's specific grievances. Upon review of his brief, it

appears to this Court that Husband is arguing that no-fault divorces are

unconstitutional because they are "hostile toward religious views[,]" as they

permit a party to seek a divorce based solely upon his/her viewpoint that the

marriage is irretrievably broken, without "consideration of actionable fault."

*Id.* at 17. Although not entirely clear, it appears Husband's belief system

allows for divorce only after a finding of wrongdoing. As such, because the

trial court did not find Husband committed "a legal infraction[,]" and because

---

[4] "Congress shall make no law respecting an establishment of religion[.]" U.S. Const. amend. I. The Establishment Clause was incorporated to the states in *Everson v. Bd. of Ed.,* 330 U.S. 1 (1947).

Husband "fundamentally disagrees with the premise that a marriage can be irretrievably broken[,]" Husband contends that granting a divorce based solely on Wife's "viewpoint" or "ideas" as opposed to conduct, is unconstitutional. *Id.* at 18. *See also id.* at 24 ("Subjecting [H]usband to [W]ife's beliefs by forcing him to incur the social, economic, religious and legal consequences of divorce, against his will and in absence of any legal violation, is equivalent to subjecting him to live according to and in conformity with [W]ife's religion, however theistic or atheistic it may be. More to the point, the Commonwealth of Pennsylvania has sponsored [W]ife's beliefs which conversely discriminates against [H]usband's beliefs and subjugates his to an official State orthodoxy."). Additionally, Husband argues that the statutory requirements set forth in section 3301(d), and more specifically the requirement of filing an affidavit alleging the parties have lived separately for a certain period of time, has made the entry of a divorce decree a ministerial act,[5] which Husband argues is likewise unconstitutional. *Id.* at 25-26. We find no merit to Husband's claims.

This Court has extensively reviewed the evolution of divorce law, as well as our legislature's addition of no-fault grounds for divorce in Pennsylvania.

> When the legislature added the no-fault grounds for divorce,
> it intended that the Divorce Code retain the traditional fault

---

[5] A ministerial act is defined as "[a]n act performed without the independent exercise of discretion or judgment." Black's Law Dictionary (11th ed. 2019).

grounds for divorce. The legislature expressly stated its findings and intent, recognizing that the family is the basic unit of society, and that the protection and preservation of the family is of paramount public concern. 23 Pa.C.S. § 3102(a). Acknowledging this, the legislature pronounced the following as the policy of the Commonwealth: to make the legal dissolution of marriage effective for dealing with the realities of matrimonial experience; to encourage reconciliation and settlement, especially where children are involved; to give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs; to mitigate harm to the parties and children; to seek the causes of family disintegration and utilize available resources; and to effectuate economic justice between parties.

The purpose of enacting no-fault divorce provisions was to provide for the legal dissolution of a marriage in a manner which would keep pace with contemporary social realities. Our lawmakers were reluctant to legislate divorce reform and, after twenty years of debate, the 1980 Divorce Code was enacted.

The sanctity of marriage and the dominant desire to preserve that union was embedded in the theory of the prior Divorce Law; that law remained virtually unchanged since first enacted in 1785 and recodified in 1815. The law acknowledged the strength of the family unit and the necessity of ensuring its preservation. Too frequently, however, the application of the law preserved the family unit in form only, its consequential pain arguably greater than the loss it sought to prevent. Judge Spaeth's dissenting opinion in **Dukmen v. Dukmen**, [420 A.2d 667, 671 (Pa. Super. 1980)], is telling:

> Perhaps the Divorce Law is flawed in not making the decisive factor in a divorce action the cessation of a loving relationship between the parties. It is our function, however, to apply the law. Thus, this court has consistently held that under the Divorce Law, the inability to live together does not constitute a ground for divorce. [] Further, we have equally consistently held "that where both parties are nearly equally at fault, so that neither can clearly be said to be the injured and innocent spouse, the law will grant a divorce to neither on the ground of indignities to the

- 8 -

person, but will leave them where they put themselves.

The adoption of the 1980 Divorce Code, and in particular the no-fault provision of irretrievable breakdown, *see* [section] 3301(d), allowed a dependent spouse to take advantage of the economic protections of the law without having to resort to seeking a divorce on fault grounds. The legislature provided this section with the economic benefits for good reason: to avoid, where possible, a contested divorce, the raw searing battle that some commentators have likened to guerrilla warfare.

*Perlberger v. Perlberger*, 626 A.2d 1186, 1193–94 (Pa. Super. 1993) (quotation marks and some citations omitted).

Contrary to Husband's beliefs, trial courts are not entitled to grant divorces based solely on an individual's "viewpoint." Nor is the act of granting a no-fault divorce purely ministerial. As set forth *supra*, section 3301(d) provides for a no-fault divorce only after a party files an affidavit alleging the parties have lived separate and apart for the requisite amount of time **and** affirms the marriage is irretrievably broken. If the non-filing party objects, the trial court is then **required** to determine whether: (1) the parties have been living separate and apart for the prescribed amount of time; and (2) the marriage is irretrievably broken.

Here, Husband had the opportunity to object to Wife's request for a divorce, and did so numerous times, including by filing an answer to the Complaint, disputing Wife's contention that the marriage was irretrievably broken. Similarly, at the Master's hearing, Husband was entitled to present evidence in support of his contention that the divorce should not be granted.

However, despite Husband's efforts, the Master found, and the trial court agreed, that the marriage of Husband and Wife was indeed irretrievably broken. The trial court did not, as Husband suggests, simply accept Wife's "viewpoint." Instead, it reviewed Wife's testimony and the Master's recommendations, and determined that Wife met her burden of proving the marriage was irretrievably broken. Such a judicial determination, necessary prior to the entry of a divorce decree, solidifies that section 3301(d), and the requirements set forth therein, are not strictly ministerial.

We are cognizant that the trial court did not attribute any "fault" or wrong-doing to either party. Nonetheless, the trial court found that Wife's position that "there was no possibility that the marriage can be repaired" and Husband's steadfast disagreement with her position was "precisely th[e] breakdown in communication that satisfies the definition of 'irretrievable breakdown.' Reconciliation cannot happen without the effort of two willing participants." Trial Court's Memorandum Opinion, 3/25/2019, at 9. Indeed, no-fault divorce was created in contemplation of situations just like this, i.e., to provide a way to end a marriage for a party, or two consenting parties, that does not meet the requirements necessary for the entry of a "fault divorce." Husband has failed to convince this Court that the addition of no-fault divorce nearly 40 years ago is an infringement on his constitutional rights. No relief is due.

- 10 -

Lastly, to the extent Husband is arguing that section 3301(d) is unconstitutional because it is incongruent with his religious beliefs, this Court has previously addressed a similar argument in *Wikoski v. Wikoski*, 513 A.3d 986 (Pa. Super. 1986). In *Wikoski*, the appellant set forth a constitutional challenge to the no-fault section of the divorce code, averring "that the grant of a divorce infringe[d] on his religious beliefs as a Roman Catholic, in that the faith opposes divorce." *Id.* This Court disagreed, finding

> [t]he state's interests in regulating marriage and divorce are clearly paramount. That regulation is inconsistent with the recognition of a unilateral right of a party to remove himself from its purview as a matter of conscience. The state has the power, properly exercised within constitutional limits guaranteeing freedom of religion, to grant divorces. Thus, whether granting appellee her divorce is viewed as not infringing upon appellant's freedom of religion [] or as interfering with the practice of his religion, [] the result reached here would be the same. To whatever extent the issuance of a divorce decree interferes with the practice of appellant's religion, it does not violate an individual's right to freedom of conscience.

*Id.* at 989. In concluding as such, this Court relied on case law from our sister state, which aptly addressed the separation between a civil contract of marriage and an ecclesiastic commitment.

> Appellant's complaint that her constitutional right for the free exercise of religion is being violated is unfounded. The action of the trial court only dissolved the civil contract of marriage between the parties. No attempt was made to dissolve it ecclesiastically. Therefore, there is no infringement upon her constitutional right of freedom of religion. She still has her constitutional prerogative to believe that in the eyes of God, she and her estranged husband are ecclesiastically wedded as one, and may continue to exercise that freedom of religion according to her belief and conscience. Any transgression by her husband of their ecclesiastical vows, is, in this instance, outside the jurisdiction of the court.

- 11 -

*Id.* at 987, *quoting* **Williams v. Williams**, 543 P.2d 1401, 1403 (Oklahoma 1975).

In light of the foregoing, not only do we disagree with Husband's interpretation of section 3301(d), we find Husband has failed to meet his hefty burden of proving it to be constitutionally infirm. Thus, Husband is not entitled to relief from this Court.

Decree Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/19