J-S42017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEREMY CRUZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MADELINE SABLE MORALES AND | : | No. 583 WDA 2022 |
| JOSE AGAPITO MORALES | : | |

Appeal from the Order Entered April 12, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No.
10726 of 2021

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED:  May 5, 2023**

Appellant, Jeremy Cruz, appeals *pro se* from the April 12, 2022 order entered in the Court of Common Pleas of Erie County that sustained the preliminary objections in the nature of a demurrer filed by Madeline Sable Morales and her father, Jose Agapito Morales, (collectively, "Morales") and dismissed Appellant's second amended complaint with prejudice.[1]  We affirm.

We previously summarized the procedural history as follows:

On August 16, 2021, Appellant filed *pro se* a complaint against Morales for, *inter alia*, two claims of breach of contract stemming from Appellant's marriage to, and subsequent divorce from, Madeline Morales.  Appellant's Complaint for Breach of Contract,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In his notice of appeal, Appellant stated that he appealed from the "judgment entered in this matter on [April 12, 2022.]"  Notice of Appeal, 5/12/22.  In fact, Appellant appealed from the April 12, 2022 order sustaining the preliminary objections and dismissing his second amended complaint.

8/16/21, at ¶66. On September 17, 2021, Morales filed preliminary objections in the nature of a demurrer to Appellant's complaint, as well as a motion to dismiss the complaint with prejudice. On September 30, 2021, Appellant filed a petition, seeking leave of court to amend the complaint to include two claims of breach of contract, as well as a claim for intentional infliction of emotional distress. The trial court subsequently denied Appellant's petition as moot, having found that Appellant filed his petition, which the trial court deemed an amended complaint, within twenty days of service of Morales' preliminary objections. Trial Court Order, 10/6/21; *see also* Pa.R.Civ.P. 1028(c)(1) (stating, "a party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections").

On October 15, 2021, Morales filed preliminary objections in the nature of a demurrer to Appellant's amended complaint, as well as a motion to dismiss the amended complaint with prejudice. On November 8, 2021, Appellant filed a second amended complaint.[FN1] On November 24, 2021, Morales filed preliminary objections in the nature of a demurrer to Appellant's second amended complaint, as well as a motion to dismiss the second amended complaint with prejudice. Appellant filed a response to the preliminary objections on December 10, 2021. On December 20, 2021, Morales filed a brief in support of the preliminary objections, and Appellant filed a response to the brief on January 3, 2022.

> [Footnote 1] Appellant, who was incarcerated in a state correctional institution at the time, received service of Morales' preliminary objections on October 27, 2021. *See* Appellant's *Pro Se* Correspondence, 11/4/21. Therefore, Appellant's second amended complaint was timely filed on November 8, 2021, pursuant to Pa.R.Civ.P. 1028(c)(1).

On January 21, 2022, Morales filed a supplement to the brief in support of the preliminary objections. On February 7, 2022, Appellant filed a petition to strike the supplement to Morales' brief in support of the preliminary objections and requested oral argument on the matter pursuant to Pa.R.Civ.P. 211. *See* Pa.R.Civ.P. 211 (stating, "Any interested party may request oral argument on a motion. The court may require oral argument, whether or not requested by a party. The court may dispose of any motion without oral argument."). On April 12, 2022, the trial court sustained Morales' preliminary objections in the nature of a

demurrer to Appellant's second amended complaint and dismissed Appellant's second amended complaint with prejudice.

On May 12, 2022, Appellant filed *pro se* a timely notice of appeal. On May 25, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) no later than Tuesday, June 21, 2022. Trial Court Order, 5/25/22. The May 25, 2022 order provided Appellant the mailing address to be used in serving a copy of his Rule 1925(b) statement on the trial court and advised Appellant that "any issue not properly included in his Rule 1925(b) statement, timely filed and served pursuant to Pa.R.A.P. 1925(b), shall be deemed waived for purpose of appeal." *Id.* The May 25, 2022 order also contained a notation that notice had been provided to Appellant on May 25, 2022, pursuant to Pa.R.Civ.P. 236, and a review of the trial court docket confirms that notice was provided on that date. *Id.*; *see also* Trial Court Docket at 5/25/22 entry[;] Pa.R.Civ.P. 236(a)(2) and (b) (requiring the prothonotary to note in the trial court docket the date upon which notice of a trial court order is provided to each party's attorney of record or, if unrepresented, to each party). A copy of the May 25, 2022 order was mailed *via* "legal mail" to Appellant using the legal address of the state correctional institution where Appellant was incarcerated, as well as Appellant's control identification number.

Appellant subsequently filed his Rule 1925(b) statement. The Rule 1925(b) statement was dated June 21, 2022, and Appellant avers in the certificate of service that the document was duly mailed on June 21, 2022. Appellant's *Pro Se* Rule 1925(b) Statement. The Rule 1925(b) statement, however, was time-stamped as having been received in the prothonotary's office on June 27, 2022, and the envelope Appellant used for mailing the Rule 1925(b) statement bears a postage meter time-stamp of June 24, 2022.

***Cruz v. Morales***, 2023 WL 371665, at *1-*2 (Pa. Super. Jan. 24, 2023) (unpublished memorandum) (original brackets and some footnotes omitted).

On January 24, 2023, this Court remanded the case to the trial court for the purpose of determining the timeliness of Appellant's Rule 1925(b) statement. ***Id.*** at *2. On March 20, 2023, the trial court filed a supplemental

Rule 1925(a) opinion stating that, upon concluding an evidentiary hearing on the matter, the trial court found Appellant's testimony and the evidence submitted at the hearing to be credible and that the Rule 1925(b) statement was timely filed on June 20, 2022, or June 21, 2022, pursuant to the prisoner mailbox rule.[2]  **See** Trial Court Opinion, 3/20/23, at 2 (stating, the trial court "credits the testimony of [Appellant] that he deposited the filing with prison officials either on [June 20, 2022, or June 21, 2022.]  This is corroborated by [Appellant's exhibit 3,] a copy of a cash slip dated June 21, 202[2], with the word 'deadline' handwritten on the document."); **see also Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997) (explaining the well-established principle, commonly referred to as the "prisoner mailbox rule," under which a document is deemed "filed" on the date an inmate deposits the mailing with prison authorities or places it in the prison mailbox).

Upon review, we concur with the trial court, and the certified record supports, that Appellant timely filed his Rule 1925(b) statement.  On July 20, 2022, the trial court filed its initial Rule 1925(a) opinion, addressing Appellant's issues raised in his Rule 1925(b) statement.  Therefore, we proceed to address the merits of Appellant's appeal.

Appellant raises the following issues for our review:

---

[2] The trial court also noted that Morales "did not meaningful[ly] refute the evidence presented by [Appellant]."  Trial Court Opinion, 3/20/23, at 2 n.1.; **see also** N.T., 2/16/23, at 3.

[1.]     Did the [trial] court erred by dismissing Appellant's complaint without a trial by jury?

[2.]     Did the [trial] court violate Appellant's [first] amendment right [of freedom of religion granted by] the United States Constitution?

[3.]     Did the [trial] court abuse its discretion by dismissing Appellant's complaint?

[4.]     Did the [trial] court violate[ A]ppellant's United States constitutional right[ of trial by jury]?

[5.]     Did Appellant and [Madeline Morales] enter[] into a legally binding[,] enforceable [oral contract]?

[6.]     Was [] Appellant required to seek [] relief and/or bring an action for support in the Domestic Relations Court?

[7.]     Was [Madeline Morales'] promise to financially care for Appellant whenever Appellant was in need [] far too vague to constitute a legally enforceable promise?

Appellant's Brief at 1 (extraneous capitalization omitted).[3]

In sum, Appellant challenges the trial court's order sustaining Morales' preliminary objections in the nature of a demurrer to Appellant's second amended complaint. *Id.* at 2-13; *see also* Rule 1925(b) Statement, 6/21/22. Appellant's second amended complaint asserts claims for breach of contract and intentional infliction of emotional distress ("IIED") against Madeline Morales and a claim for IIED against Jose Morales. *See generally,* Second Amended Complaint, 11/8/21.

Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the

_____

[3] For ease of identification, we have assigned page numbers to Appellant's unpaginated brief.

trial court committed an error of law.  When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.  Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.  If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Albert v. Erie Ins. Exch.*, 65 A.3d 923, 927-928 (Pa. Super. 2013) (citation omitted); *see also Am. Express Bank, FSB v. Martin*, 200 A.3d 87, 93 (Pa. Super. 2018) (stating, this Court's review of a trial court order sustaining a preliminary objection in the nature of a demurrer is plenary).

"To successfully maintain a cause of action for breach of contract [a] plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  *Albert*, 65 A.3d at 928 (citation omitted).  "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded.  Clarity is particularly important where an oral contract is alleged."  *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. 2006) (citations omitted), *appeal denied*, 907 A.2d 1103 (Pa. 2006).

Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms[,] as well as the

subject matter. If anything is left open for future negotiation, the informal paper cannot form the basis of a binding contract.

*GMH Assocs., Inc. v. Prudential Realty Group*, 752 A.2d 889, 900 (Pa. Super. 2000) (citation and quotation marks omitted), *appeal denied*, 795 A.2d 976 (Pa. 2000).

To establish a claim for IIED, a plaintiff must sufficiently plead that (1) the conduct of the defendant or defendants was extreme and outrageous, (2) the conduct was intentional and reckless, (3) the conduct caused emotional distress, and (4) the distress was severe. *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022).

> For an IIED claim to survive a preliminary objection, a [trial] court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct. The conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* (citations omitted).

In the case *sub judice*, the trial court, in sustaining Morales' preliminary objections, held that Appellant failed to plead an enforceable contract for support based upon the exchange of marriage vows because, *inter alia*, the exchange of wedding vows does not create an enforceable contract based upon the representations expressed within the vows themselves. Trial Court Opinion, 4/12/22, at 3-4. Moreover, in finding that Appellant failed to plead an enforceable oral contract based upon the verbal exchange between Appellant and Madeline Morales at the time Appellant signed an affidavit of

consent to the entry of a final divorce decree, the trial court stated, "[Madeline Morales'] alleged promise to financially care for [Appellant] whenever he was in need is far too vague to constitute a legally enforceable promise." *Id.* at 5 (noting that, Appellant "characterizes the promise as one to support him whenever he is 'in a serious pickle,' but it is not clear from the averments that the parties actually contemplated such a 'serious pickle' term, nor is it clear what circumstances would or would not qualify under this vague standard"). The trial court further noted that, in his own pleadings, Appellant conceded that no specifics about the terms of the oral contract were discussed at the time Appellant executed the divorce document. *Id.* Finally, regarding the IIED claims, the trial court explained,

> [Appellant's two-part claim] that [Madeline Morales] refused to support him financially while [Appellant was] facing criminal prosecution or otherwise, or that [Jose Morales] interfered with his marriage, [which] caused him to lose faith in any future fathers-in-law, and led him to take pain medications, [] fall[s] woefully short of outrageous conduct [required to demonstrate a claim for IIED.] Such allegations of negligence and carelessness do not rise to the level of conduct premised upon standards such as "atrocious" and "utterly intolerable" behavior.

*Id.* at 8 (citation and some quotation marks omitted).

A review of Appellant's second amended complaint demonstrates the following pertinent averments in support of Appellant's claims for breach of contract and IIED.

24.) At the [pre-marriage meeting with the Reverend who was to perform the marriage ceremony, the Reverend] spoke to [Appellant] and [Madeline Morales. H]e explained what marriage means and he also strictly explained to the couple

the basic fundamentals of marriage under God. [Appellant and Madeline Morales] agreed and accepted the terms and conditions of that bond which is also known as a "contractual relationship".

25.) [In October 2011, the Reverend] married [Appellant] and [Madeline Morales.]

. . .

31.) [Jose Morales] would always seem to interrupt [Appellant's routine of picking up Madeline Morales' children from school] and the manner [in which Madeline Morales] and [Appellant] would raise the children[. Jose Morales] would disregard the rules that [Madeline Morales and Appellant] set as parents. [Appellant] understands that [Jose Morales] is the [children's] grandfather and he wants to spoil the children, but when [his actions go] against what the [parents put] in place, it causes problem[s].

. . .

33.) [Jose Morales] seemed to always battle and challenge the role that [Appellant] was given by [Madeline Morales. Appellant] was "Papi", which means "Dad" and [Jose Morales] never respected that fact which caused [Madeline Morales and Appellant] to argue.

. . .

36.) [Madeline Morales] filed for [] divorce.

37.) [Appellant] refused to sign the [divorce documents] and [Madeline Morales] was his support and [Appellant] was left out to dry.

38.) One day [Madeline Morales] asked [Appellant] if he could meet her[. At the meeting, Madeline Morales] made a deal (oral contract) with [Appellant. The deal was] that if [Appellant] signed the divorce papers, that [Madeline Morales] would financially take care [of Appellant whenever] he was in need. No specifics [were] said about the deal, only that if [Appellant] was in a struggle that she would be there to assist him.

39.) [Appellant] eventually agreed and he signed the divorce papers without reviewing the documents because [Madeline

Morales] advised [Appellant] of what was in the divorce documents.

. . .

42.) [A] few years [later Appellant] reconnected with [Madeline Morales,] and during that time, [Madeline Morales] bought a [vehicle] for [Appellant] because [he needed a vehicle for his employment.]

43.) [Appellant] was instructed to pay $200.00 a month for the vehicle.

. . .

46.) [At some point, Appellant] ended up going to jail for [an issue unrelated to the current controversary,] and [Appellant] stayed in jail no more than 3 days [before Madeline Morales paid the bail for his release.]

. . .

48.) [In August 2017, Appellant] was charged with some very serious criminal charges and needed financial help to retain an attorney to defend [Appellant].

51.) [Appellant] did his best to contact [Madeline Morales] and he was being ignored. [Madeline Morales] had a contract with [Appellant] which needed to be performed on her end.

52.) Due to [Madeline Morales] not performing her end of the "deal", [Appellant] had no choice but to go ahead with the public defender that the [trial court] appointed and that attorney did absolutely nothing for [Appellant. D]ue to the attorney doing not a thing for [Appellant, Appellant] was ultimately found guilty after a jury trial.

. . .

73.) [Appellant] avers that the only reason why he signed [the] divorce document[] was [] because [Madeline Morales] made a deal and a promise [] that when [Appellant] was in need of financial help[] she would be there to help.

. . .

76.) [Appellant] avers that he did not file for alimony simply because he had an agreement with [Madeline Morales] so

he was not worried about money. [Appellant] knew that if he was seriously in a serious pickle, that he could count on [Madeline Morales.]

. . .

80.) As for the [IIED claim, Madeline Morales] did cause that [distress] because she did know that she had an obligation[,] and in the community, everybody speaks, and when [Appellant] was charged, everybody started to talk about the problem that [Appellant] was in, and [Madeline Morales] was told by a family member, and she did not aid [Appellant] in his worst time of his life.

. . .

81.) [Jose Morales] did cause [IIED] to [Appellant] and also physical pain as well. [Appellant] can't sleep at times, and he has to take pain pills to [alleviate] his head pain[. Appellant] lost trust for any father[-]in-laws in the future, and that is not right. [Jose Morales] did directly and voluntarily cause problems to the marriage of [Madeline Morales and Appellant.]

Second Amended Complaint, 11/8/21 (extraneous capitalization and emphasis omitted).

We first examine the argument that the exchange of wedding vows between Appellant and Madeline Morales created an oral contract under which Madeline Morales was obligated to provide financial support to Appellant. We disagree, as a matter of law, with the trial court's conclusion that the exchange of wedding vows does not "in and of [itself create] legally enforceable obligations." **See** Trial Court Opinion, 4/12/22, at 4. It is well-established that marriage is a civil contract "entered into by words in the present tense" and "does not require any particular form of solemnization before officers of church or state." **Fiedler v. Nat. Tube Co.**, 53 A.2d 821, 822 (Pa. Super.

- 11 -

1947); *see also In re Estate of Carter*, 159 A.3d 970, 974 (Pa. Super. 2017) (stating that, marriage is "a civil contract made between [two] parties with the capacity to so contract"). A ceremonial marriage, such as the one Appellant avers occurred between he and Madeline Morales in the case *sub judice*, "is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities." *Carter*, 159 A.3d at 974. Our Supreme Court has described a ceremonial wedding as typically involving an exchange of vows between the individuals "to support one another emotionally and financially[.]" *Devlin v. City of Philadelphia*, 862 A.2d 1234, 1243 (Pa. 2004); *see also* 23 Pa.C.S.A. § 4321(1) (stating, "[m]arried persons are liable for the support of each other according to their respective abilities to provide support as provided by law").

Nonetheless, just as a general contract can be terminated pursuant to its terms or by agreement of the parties, it is well-established that a marriage contract may be terminated by, *inter alia*, divorce. *See Eisenberg v. Eisenberg*, 160 A. 228, 230 (Pa. Super. 1932) (stating, a marital contract "is dissolved from the date of the entry of the [divorce] decree"); *see also* 23 Pa.C.S.A. § 3102 (stating that, the legislative intent behind the passage of the Divorce Code, 23 Pa.C.S.A. §§ 3301-3904, was to enact a law "for [the] legal dissolution of marriage"). In the case *sub judice*, Appellant and Madeline Morales were divorced on August 8, 2013. Second Amended Complaint, 11/8/21, at ¶62. As such, any contractual obligations which arose out of their marriage contract, *i.e.*, mutual promises to financially support each other

during the marriage, ended upon entry of the divorce decree.[4, 5] ***Eisenberg***, 160 A. at 230.

Turning to Appellant's argument that an oral contract arose from his encounter with Madeline Morales pertaining to his signing of divorce documents, we are ever-mindful that "[f]or a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain."

_____

[4] We concur with the trial court that any "financial obligation arising from the marriage" that continues after divorce, "must be brought in the form of a support action under [the] Domestic Relations Code."  Trial Court Opinion, 4/12/22, at 4; ***see also*** 23 Pa.C.S.A. § 3701 (pertaining to the award of alimony as part of a divorce proceeding).

Moreover, aside from the general obligations to emotionally and financially support each other that are inherent to a marriage contract, Appellant did not allege any specific vows or promises in the second amended complaint that were made during the wedding ceremony between Appellant and  Madeline Morales.  Appellant simply alleged that the Reverend "explained what marriage mean[t]" and Appellant and Madeline Morales "agreed and accepted [] the terms and conditions of that bond."  Second Amended Complaint, 11/8/21, at ¶ 24.

[5] To the extent that Appellant argues that the trial court violated his constitutional right to freedom of religion by sustaining the preliminary objections on the ground a marriage contract between the parties was not enforceable, we find this argument to be without merit.  As stated *supra*, marriage is a civil contract that may be dissolved by divorce, and Pennsylvania has the power to regulate marriage and divorce without encroaching upon the ecclesiastical aspect of the marital bond and beliefs, as well as an individual's freedom of religion.  Thus, while the state and courts no longer recognize Appellant's marital contract, it is still his constitutional prerogative to believe that in the eyes of God, a marital bond still exists.  ***See Pankoe v. Pankoe***, 222 A.3d 443, 449-450 (Pa. Super. 2019), *appeal denied*, 237 A.3d 965 (Pa. 2020), *cert. denied*, 141 S.Ct. 1063 (2021).

*Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006) (stating that, "[a]n enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity"); *see also United Envtl. Group, Inc. v. GKK McKnight LP*, 176 A.3d 946, 963 (Pa. Super. 2017) (stating, "the essential terms of that agreement [must be] certain enough to provide the basis for providing an appropriate remedy"). "If the essential terms of the agreement are so uncertain that there is no basis for determining whether the agreement has been kept or broken, there is not an enforceable contract." *United Envtl. Group*, 176 A.3d at 963.

> Here, as the trial court stated, and the record supports,
>
> it is impossible to tell whether [Appellant's] desire for a private defense attorney to be funded by [Madeline Morales] was contemplated under the alleged agreement or not. [Appellant] characterizes the promise as one to support him whenever he is "in a serious pickle," but it is not clear from the averments that the parties [subjectively defined between themselves what was contemplated by the term "serious pickle"], nor is it [objectively] clear what circumstances would or would not qualify under this vague standard.

Trial Court Opinion, 4/12/22, at 5. In his second amended complaint, Appellant averred "no specifics" were discussed as part of the oral contract that Appellant contends was formed when Madeline Morales agreed to financially support Appellant "[whenever] he was in need" in exchange for his consent to the entry of the final divorce decree. Second Amended Complaint, 11/2/21, at ¶38. As such, accepting the material facts in the pleadings as true, while Madeline Morales may have made such a promise to Appellant in

exchange for his signature on the relevant consent forms, we concur with the trial court that the essential terms of that agreement, namely the conditions under which Madeline Morales was obligated to financially support Appellant (in other words, what constitutes a "serious pickle"), are too vague and uncertain as to permit the enforcement of such a contract.

Finally, we consider Appellant's IIED claims. Based upon the allegations contained in Appellant's second amended complaint (together with any reasonable inferences deducible therefrom), we concur with the trial court that Appellant has not come forward with averments that support his IIED claims by demonstrating extreme or outrageous conduct on the part of either Madeline Morales or Jose Morales. *See* Trial Court Opinion, 4/12/22, at 8. Put differently, we are without doubt that Appellant will be unable to prove facts legally sufficient to establish his right to relief on his second theory of recovery. In sum, Appellant avers that Madeline Morales failed to support him financially so he could retain a private defense attorney in his then-pending criminal charges and that Jose Morales interfered with his marriage and family. *See* Second Amended Complaint, 11/8/21, at ¶¶80-81. This conduct by Madeline Morales, who was under no obligation to support Appellant, or by Jose Morales, is not the type of conduct which is so extreme or outrageous to be regarded as "atrocious[] and utterly intolerable in a civilized community." *Jordan*, 276 A.3d at 735 (stating that recovery for IIED is allowed in only "very egregious cases").

For these reasons, we discern no error of law by the trial court in sustaining Morales' preliminary objections in the nature of a demurrer and dismissing Appellant's second amended complaint with prejudice.[6]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2023

---

[6] Moreover, we discern no error of law or abuse of discretion by the trial court in sustaining Morales' preliminary objections and dismissing Appellant's second amended complaint without first convening an evidentiary hearing. It is well-established that "[p]reliminary objections in the nature of a demurrer require the [trial] court to resolve the issues solely on the basis of the pleadings[. N]o testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." **Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 805 (Pa. Super. 2007), *appeal denied*, 945 A.2d 171 (Pa. 2008). Because the trial court's decision to sustain Morales' preliminary objections in the nature of a demurrer must be based upon a review of Appellant's second amended complaint and all inferences reasonably deducible therefrom, it was without error or abuse of discretion that the trial court sustained the preliminary objections without first convening an evidentiary hearing.