J-A10026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHAN LU | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUN LI | : | |
| | : | |
| Appellant | : | No. 3368 EDA 2024 |

Appeal from the Order Entered November 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-07538-CU

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED MAY 30, 2025**

Jun Li ("Father") appeals pro se from the order entered by the Chester County Court of Common Pleas ("trial court") granting the second petition for civil contempt for disobedience of a custody order filed by Shan Lu ("Mother") after it found that Father had once again willfully and wrongfully failed to comply with a court order to pay the outstanding fees invoiced by a court-appointed custody evaluator. Upon review, we affirm.

We glean the following facts and procedural history from the certified record. Mother and Father (collectively, "Parents") were married in China in 2012 and subsequently relocated to Pennsylvania. In 2013 and 2015, they had two minor children together, each with the initials J.L. (collectively,

_____

[*] Retired Senior Judge assigned to the Superior Court.

"Children"). In 2017, Mother filed a complaint for divorce and custody.[1] On January 31, 2018, following Parents' participation in conciliation, the trial court entered an order memorializing Parents' custody arrangement, which provided for shared legal custody, Mother to have primary physical custody, and Father to have partial physical custody. Several years later, Mother filed a petition for modification and alleged that Father was abusive towards his elderly father and Children. Following a conciliation conference, the trial court entered a temporary custody order on August 11, 2022, modifying Father's physical custody to supervised and directing that Children undergo counseling.

The following day, Father filed a demand for trial. Mother petitioned the court to appoint a child custody evaluator before proceeding to trial, which Father opposed. By order entered on November 3, 2022, the trial court required the parties to undergo a custody evaluation conducted by Dr. Gerald Bellettirie. In addition to establishing the parameters of the evaluation, the trial court ordered Parents to "participate fully with the evaluator on a timely basis, including retaining the evaluator upon appropriate terms, scheduling appointments, [and] paying promptly[.]" Trial Court Order, 11/3/2022, ¶ 1.B. Additionally, the order specified that the cost of the evaluation would be allocated evenly between Parents "without prejudice to the ultimate apportionment of such costs by subsequently agreement of the parties or

_____

[1] Father was represented by several attorneys in the custody matter before the trial court until July 21, 2023, when he began proceeding pro se.

[o]rder of [c]ourt" and that "payment shall be made within 20 days of the entry of this Order." *Id.*,¶ 1.C.

The parties participated in three additional conciliation conferences, after which the trial court entered a trio of temporary custody orders modifying the custody terms. *See* Trial Court Order, 12/9/2022, ¶¶ 3.a., 6.b. (changing the provider supervising Father's visits and directing the parties to undergo reunification counseling); Trial Court Order, 12/28/2022, ¶ 3.a. (modifying Father's custody from supervised to unsupervised partial physical custody); Trial Court Order, 3/17/2023, ¶ 3.a. (returning Father's custody to supervised, now with a licensed professional counselor).

In addition to changing the terms of Father's custody, the March 17, 2023 order specified that the terms and conditions of the November 2, 2022 order pertaining to the custody evaluation remained in effect, except for a change of evaluator from Dr. Bellettirie to Dr. Heather Green, PhD. Trial Court Order, 3/17/2023, ¶ 5.c. Similar to the original order, the March 17, 2023 order specified that "[c]osts for this evaluation shall be split between the parties 50% Father and 50% Mother." *Id.* The order directed Parents to contact the court to schedule a review with the custody conciliator once the evaluation was complete. *Id.*[2]

_____

[2] In a series of filings, Parents litigated additional issues pertaining to the March 17, 2023 order, but none changed the directive for Parents to obtain and split the costs of an evaluation with Dr. Green. *See* Trial Court Order,
*(Footnote Continued Next Page)*

On April 12, 2024, Mother filed a petition seeking a finding of contempt against Father. According to the petition, Dr. Green had completed the report based upon her interviews and assessments of Parents and Children in January 2024, but Dr. Green still had not released the report because Father had an unpaid balance of $6,492.95 pending since January. *See* Petition for Contempt, 4/12/2024, at Exhibit B (4/4/2024 Letter from Green to Mother's Counsel), Exhibit C ("Invoice"). Mother requested that the trial court enter an order holding Father in contempt and directing him to pay the balance to Dr. Green along with Mother's attorneys' fees incurred in bringing the motion. *See id.*, ¶¶ 2, 4.

In response, Father asserted that Dr. Green charged Parents for an additional sixty hours for reviewing records and writing the report at the rate of $275 per hour after he and Mother each had paid Dr. Green $11,250.00 for her services, bringing the grand total of the custody evaluation to $35,485.89. Answer to Petition for Contempt, 4/29/2023, ¶ 2. Father had not paid Dr. Green because, in his opinion, the charge for the additional sixty hours was "unreasonable," "untrue," "dishonest," "highly overcharged," "absurd," "unprofessional," and "unacceptable." *See id.*, ¶¶ 2, 5.

---

6/7/2023, ¶ 2 (explicitly exempting the portion of the order regarding the evaluation from a temporary stay of other portions of the March 17 order); Trial Court Order, 7/23/2023, at 1 (reinstating all terms and conditions of the March 17 order).

The trial court conducted a hearing on June 28, 2024, wherein the court heard testimony from Dr. Green and Father. The trial court entered an order on July 2, 2024, finding Father in contempt of the March 17, 2023 order that had required Father to pay fifty percent of Dr. Green's fee. Trial Court Order, 7/2/2024, ¶¶ 1. The trial court did not order Father to pay Mother's attorneys' fees or otherwise sanction Father, instead only mandating that Father pay what he owed. **See id.**, ¶ 2 ("[Father] shall pay to [Dr. Green] $6,492.95 within three … business days of the date of this order.").

Father filed a notice of appeal to this Court, which was docketed at 1985 EDA 2024. After giving Father an opportunity to respond to a rule to show cause, this Court quashed Father's appeal sua sponte in a per curiam order entered on September 9, 2024. This Court explained that because the July 2, 2024 order directed specific performance of the March 17, 2023 order without imposing sanctions, the July 2, 2024 order was an unappealable interlocutory order. **See** Order, 1985 EDA 2024, 9/26/2024, at 1. Father timely filed an application for reconsideration, which this Court denied on October 7, 2024. Thirty-one days after the entry of this Court's denial order, Father filed an untimely petition for allowance of appeal, which resulted in the Supreme Court's administrative closure of the matter on November 12, 2024. **See** Pa.R.A.P. 1113(a) (providing thirty days to file a petition for appeal following the entry of the Superior Court's order).

Meanwhile, Mother filed a second petition for contempt on September 6, 2024, averring that Father still had not paid Dr. Green in willful defiance of the July 2, 2024 order to do so. Petition for Contempt, 9/6/2024, ¶ 4. She sought attorneys' fees associated with her filing of the petition. *Id.*

Father filed an answer pro se. Among other things, Father contended that order only required him to pay costs that were reasonable, that the billed cost for sixty hours spent reviewing records and writing the report was unreasonable, and that he did not need to pay until his appeal was resolved. *See* Father's Answer and Counterclaim to Petition for Contempt, 9/26/2024, ¶¶ 1, 2, 4. Father also purported to bring a counterclaim against Mother, seeking fees and costs for defending against Mother's petition, which he claimed was contemptuous, obdurate, vexatious and brought in bad faith. *Id.*, ¶¶ 7-10. He further claimed that Mother was in contempt of the May 25, 2023 order by hiding Children from Father during time he was to have unsupervised visitation. *Id.*, ¶¶ 11-12.

The trial court conducted a hearing on November 19, 2024. Mother was represented by Attorney Craig B. Huffman, while Father appeared pro se. In his opening statement, Father argued that he was not in willful contempt of the July 2, 2024 order because Dr. Green's fees for reading records and writing the report were unreasonable. *See* N.T., 11/19/2024, at 4-5. The trial court acknowledged Father's position but informed Father that "we've already litigated that portion of things." *Id.* at 4.

- 6 -

The trial court then asked Attorney Huffman a series of questions. In relevant part, in response to the trial court's query to confirm that Dr. Green had already testified and reviewed all of the expenses associated with the evaluation, Attorney Huffman responded affirmatively, reminding the trial court that the contested fees were for the writing of the report, that Mother had paid her portion, that Father had not, and that Dr. Green would not release the report until Father paid his portion. *Id.* at 5-7. The trial court asked Attorney Huffman whether Father was aware that the matter could not move forward without the report, thereby keeping Father's supervised custody as the status quo. *Id.* Attorney Huffman responded that this was his assumption. *Id.* at 6. The trial court asked whether Father had been exercising his rights to supervised visits. Attorney Huffman responded affirmatively but contended that Father uses only two out of the four hours available and occasionally cancels all together, and that the supervisors of the visits recently had sent emails about "some problems." *Id.* at 7.

Turning to Father, the trial court asked, "Mr. Liu, what do you have to say for yourself?" *Id.* at 9. Father began by offering a rebuttal to Attorney Huffman's assertions that he had canceled visits, when the trial court interrupted Father and told him, "[w]e don't need to get into that part of things" because "[w]e're here today just for the contempt." *Id.* at 10. Father replied, "Let me finish." *Id.* The trial court declined, reminding Father that the court discussed the courtroom rules about talking over each other at the

- 7 -

last hearing and recalled that Father was "not very professional." *Id.* at 10. Father interrupted and complained that the court had cut him off from speaking. *Id.* The trial court admonished Father, stating that because Father tended to go "on a tangent" and "off-target," the court would use its power to "cut [him] off" when it did not perceive his reply to be responsive to the court's question. *Id.*

Father verbally acknowledged that he needed to cease talking when the trial court wished to speak and tried to return to the topic of the supervised visits. *Id.* at 11. The trial court stopped him, telling Father that it did not need to know about the supervised visits at the moment, but that it did need to know why Father had not paid Dr. Green despite owing the money and the trial court's prior order to pay her. *Id.* When Father responded that he did not pay Dr. Green because of her failure to itemize the hours in question, the trial court again interjected, telling Father that he could not relitigate this issue because the court had decided that Dr. Green's fees were reasonable at the last hearing. *Id.* at 12. Father persisted, arguing that the court's order had "some errors," and twice more the trial court stopped Father from continuing to complain about Dr. Green's fees. *Id.* at 12-13.

The trial court asked Father if he intended to pay Dr. Green's invoice or not. *Id.* at 13. Father responded that he offered to pay Dr. Green $2,000.00 2 days ago. *Id.* at 14. Upon hearing that Father had tried to negotiate the amount that he had been ordered to pay, the trial court cautioned Father that

if he did not pay the specific amount in the order, it had the power to place Father in jail until he paid. *Id.* Father noted that he had filed an appeal and that he planned to seek nunc pro tunc relief of the Supreme Court's dismissal of his appeal. *Id.* at 15-16. The trial court informed Father that it did not hear any reason to justify his failure to abide by the July order to pay Dr. Green, that the court already had found the fees to be reasonable, and that the "figure is the figure." *Id.* at 16-18. The trial court cautioned Father that he held "the keys to what [his] relationship is with [his] kids," and that his visits would remain supervised until the court reviewed Dr. Green's recommendation, which may or may not be favorable for him. *Id.* at 17-18. Father then promised to pay the full amount "after [the] hearing." *Id.* at 18.

The trial court announced that it found Father in willful contempt of the court order and that he must pay Dr. Green by the "end of business" that day. *Id.* at 18. The court awarded counsel fees to Mother, explaining to Father that Mother "shouldn't have to come back to court" and "spend more money on an attorney" because Father was "failing to do [his] job." *Id.* at 18-19. The trial court informed Father that if he did not pay Dr. Green by five o'clock that day, the trial court would put him in jail for one month or until Father purged the sanction by paying the balance of what he owed Dr. Green. *Id.* at 20-21. Father responded, "I will pay Dr. Green but I don't think I need to pay attorney fee for [Attorney] Huffman." *Id.* at 22. The trial court told Father that it did not care what Father thought "at this point," and that it ordered

him to pay the counsel fees because he kept "dragging [Mother] into court with these inane allegations" instead of doing what the court ordered him to do originally. *Id.* The hearing concluded with the following exchange:

[Father]: If I appeal your order, do I need to pay or what?

[Trial court]: Mr. Li, I find you in willful contempt. You understand that. Right?

[Father]: Yeah. I mean I already paid $11,250.

[Trial court]: I'm hoping that I'm going to hear by the end of business that Dr. Green has been paid. Do you understand?

[Father]: Yeah. I will pay Dr. Green.

[Trial court:] You will pay Dr. Green?

[Father]: Yeah.

[Trial court]: Thank you very much. That's all for today.

[Father]: Sorry.

[Attorney Huffman]: Thank you, Your Honor. May we be excused, Your Honor?

[Trial court]: You may be excused. That's it, sir.

[Attorney Huffman]: Thank you.

[Father]: Can I pay her tomorrow?

[Trial court]: No. Today.

[Father]: No, because I still have to drive back home, it take me two-and-a-half-hour drive –

[Trial Court]: Today.

[Father]: Okay.

- 10 -

*Id.* at 22-23.

Following the hearing, the trial court entered a written order consistent with its verbal order on the record. Trial Court Order, 11/21/2024, ¶¶ 1-4.

Father filed a notice of appeal. Both Father and the trial court complied with the mandates of Rule 1925 of the Pennsylvania Rules of Appellate Procedure. Father asks this Court to decide the following ten issues on appeal:

1. Is Heather Green credible by charging the parties $35,484.89 for a regular child custody evaluation and charged 60 hours solely for record review and report writing?

2. Shall Heather Green provide Father an itemized bill, especially for the 60 hours which she solely spent for record review and report writing?

3. Did Father willfully contempt the court order since he did not pay in full for an overcharged and disputable bill?

4. Is it appropriate for Judge Deborah Ryan to threaten FATHER to put him into jail if he did not make the full payment the same day of the hearing?

5. Is it appropriate for Judge Deborah to keep disrupting Father and not let him speak during the hearing and treated Father very different as she treated the other party, especially the other party's counsel?

6. Did Judge Deborah Ryan abuse the power to enter such an unfair order both on November [21], 2024, and [July 2], 2024?

7. Are there six errors on [July 2,] 2024, order?

8. Are there errors on November [21], 2024, order?

9. Shall the court consider the fact that Heather Green has a trackable history of overcharging her customers while she conducted the business in Ardmore, Pennsylvania?

- 11 -

10. Shall the court consider the fact that Heather Green only has a one star out of five stars review from her customers because she is unprofessional, biased, and dishonest?

Father's Brief at 9-11.

Because compliance with our rules of appellate procedure is mandatory and we may dismiss an appeal when defects in a brief are substantial, we begin by addressing the numerous defects in Father's brief. *See* Pa.R.A.P. 2101. Despite presenting ten issues, Father fails to divide the argument section of his brief "into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). In fact, the argument section of Father's brief is a single paragraph. *See* Father's Brief at 18-19. The bulk of Father's arguments appear outside of the argument section and infiltrate the other sections of his brief, including in the statement of the case, where argument is expressly prohibited. *See* Pa.R.A.P. 2117(b); *see also* Father's Brief at 6-9, 11-16 (setting forth argument in the statement of scope and standard of review and in the statement of the case). But for a single citation to an order, his brief contains no citations to the record. *See* Father's Brief at 4. Father's brief cites only one case. *See* Father's Brief at 6. As such, his brief is noncompliant with the rules requiring litigants to cite to the record and to cite to and discuss legal authorities. Pa.R.A.P. 2117(a)(4), 2119(a), (c). Finally, Father's brief lacks the certificates of compliance required by Rules 127 and 2135(d). *See* Pa.R.A.P. 2101.

While this Court is "willing to liberally construe materials filed by a pro se litigant," there is a limit. *Jordan v. Pa. State Univ.*, 276 A.3d 751, 761 (Pa. Super. 2022). "[P]ro se status confers no special benefit upon [an] appellant," and "[a]ny person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.* Nevertheless, because we are able to ascertain the gist of Father's appellate arguments, we proceed to the merits notwithstanding Father's many rule violations.

Father insists that he did not engage in willful contempt of the trial court's orders. In his view, he has paid his share of all reasonable costs in full and that the "intent" of the March 17, 2023 order was for the parties to pay all "reasonable costs," not any amount that Dr. Green charged the parties within her sole discretion. *See id.* at 6-7, 18. Father asserts that the total cost of the evaluation—$35,485.89—is outrageous because it "far exceeds" the typical cost for a child custody evaluation in Pennsylvania, which Father baldly claims is "less than $15,000." *Id.* at 6-7. Father argues that Dr. Green takes advantage of "her vulnerable customers" and a "history of overcharging," as evidenced by her receiving one out of five stars by those who have reviewed her on Google. *Id.* at 17.

The heart of Father's argument, however, continues to be his insistence that the fees that Dr. Green charged for the sixty hours she spent reviewing records and drafting the report were unreasonable and excessive, particularly

because Dr. Green refused to itemize the time. *See* Father's Brief at 18; *see also id.* at 4, 12-13. In Father's opinion, there was "no need for [Dr.] Green to spend such a huge amount [of] time" because she already had reviewed the materials in the fourteen sessions she spent meeting with the parties and claims, without support, that Dr. Green fabricated the amount of time spent. *See id.* at 7, 13. He asserts that "the reason why [he] did not follow the court order" was because the trial court did not consider Dr. Green's unfair overcharging and because there were "six errors" in the order, all of which relate to Father's disagreement with the trial court's factual findings at the June hearing. *Id.* at 14.

Father also takes issue with the procedure of the November 19, 2024 hearing, contending that the trial court "did not allow" him to present the facts. *Id.* at 18. According to Father, the trial court treated him with disrespect and prejudice because of his ethnicity and gender during both the June and November hearings, as evidenced by the trial judge's tone and facial expressions, her interruptions of Father when he was speaking, and her manner of speaking to Mother's counsel by comparison. *Id.* at 8-9, 16-17. Father argues that it was unreasonable for the trial court, at one o'clock in the afternoon, to threaten to incarcerate him if he did not pay by the end of the business day because he had a three-hour drive back to his residence in New Jersey. *Id.* at 15, 17.

We review custody contempt orders for an abuse of discretion. ***E.K. v. J.R.A.,*** 237 A.3d 509, 526–27 (Pa. Super. 2020). A trial court abuses its discretion in entering a custody contempt order if it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. ***Id.*** "This Court must place great reliance on the sound discretion of the trial court when reviewing an order of contempt." ***Rogowski v. Kirven***, 291 A.3d 50, 57 (Pa. Super. 2023). Because the trial court had the opportunity to observe the demeanor of the witnesses before it, this Court defers to the trial court's credibility determinations. ***Harcar v. Harcar***, 982 A.2d 1230, 1236 (Pa. Super. 2009).

Pennsylvania courts "possess an inherent power to enforce their orders by way of the power of contempt." ***Fetzer v. Fetzer***, __ A.3d __, 2025 WL 1338295, at *4 (Pa. Super. 2025). "The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." ***Harcar***, 982 A.2d at 1235. The Child Custody Act permits the trial court to adjudge in contempt any party who willfully fails to comply with a custody order and to impose a variety of sanctions. 23 Pa.C.S. § 5323(g). Such sanctions include counsel fees and the ability to incarcerate a party for up to six months, so long as the contemnor has an opportunity for release upon compliance with a specified condition. ***See id.***

To obtain a finding of contempt, the complaining party must establish the violation of the custody order by a preponderance of the evidence. ***J.M.***

*v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (en banc). Specifically, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id.*

As the trial court explained in its opinion, Mother established at the first contempt hearing that Father had notice of the clear terms of the March 17, 2023 order to pay half of Dr. Green's costs. *See* Trial Court Opinion, 1/8/2025, at 5. Instead of petitioning the court to modify the order, Father "decided for himself that he would not comply with the trial court's March 2023 [o]rder." *Id.* at 6. At the second contempt hearing, "Father did not deny his failure to abide by the terms" of the July 2, 2024 order and "attempted to justify his contempt by arguing again that the fees charged by Dr. Green were unreasonable." *Id.* "Despite the long and contentious nature of this custody matter as reflected in the trial court record, in Father's lay opinion, Dr. Green did not need the amount of time charged to complete her evaluation and therefore he had no obligation to pay those fees." *Id.* The trial court explained that it "found Father's opinion to be without merit or support in the record." *Id.* After listening to Father's bald allegations against Dr. Green and hearing Dr. Green's testimony at the first hearing, the "trial court concluded that Dr. Green exercised appropriate professional judgment in executing the trial court's directive and engaging in the court ordered custody evaluation."

*Id.* at 6-7. The trial court emphasized that the second hearing was not intended to relitigate issues previously decided and was directed solely to the issue of whether Father willfully failed to pay the money as directed in the July 2, 2024 order. *Id.* at 7. It concluded without hesitation that the answer was yes. *See id.*

After considering Father's arguments, the record before us, and our standard of review, we discern no abuse of discretion in the trial court's conclusion. The rules of civil procedure pertaining to custody actions authorize the trial court to order "any party to submit to and fully participate in an evaluation by an appropriate expert" and to direct the "place, manner, conditions[,] and scope of the examination." Pa.R.Civ.P. 1915.8(a). The trial court ordered Parents to split the costs of the evaluation. *See id.* (directing the trial court to consider "the allocation of the costs … attendant to the undertaking of the evaluation and preparation of the resultant report"). Father was fully aware that the trial court had ordered him to pay half of Dr. Green's fees in March 2023, and then specifically ordered him to pay the remaining balance of Dr. Green's fees within three business days of the order entered on July 2, 2024. Father does not argue that he is unable to comply with the trial court's order; he simply states that he is unwilling to do so. *See, e.g.,* Father's Brief at 14. He once again chose not to pay Dr. Green's fees because he deemed the fees to be excessive, despite the court's determination after the first hearing that Dr. Green had exercised appropriate professional

judgment in executing the court's directive to complete the custody evaluation. A parent subject to a custody order "is not permitted to ignore the order and unilaterally institute measures she feels appropriate instead of the order." ***Luminella v. Marcocci***, 814 A.2d 711, 719 (Pa. Super. 2002). The record reveals that Father had notice of the March 2023 and July 2024 orders to pay Dr. Green, willfully decided not to pay Dr. Green, and wrongly intended to disregard the court's order because of his disagreement with the trial court's mandate. ***See J.M.***, 164 A.3d at 1264. Father has failed to convince us that the trial court misapplied the law, exercised its discretion in a manner lacking reason, or ignored legal procedure in arriving at its decision to hold Father in contempt. ***See E.K.***, 237 A.3d at 526–27.[3]

In arriving at this conclusion, we specifically considered Father's arguments concerning the procedure of the November hearing and his accusations of prejudice by the trial court.[4] In concluding that the trial court

_____

[3] We note that Father's appeal of the July 2, 2024 order did not automatically stay the effect of the order. ***See*** Pa.R.A.P. 1731(b) (providing that "an appeal from an order of counsel fees and costs" in a domestic relations matter "shall operate as a supersedeas only upon application to and order of the trial court and the filing of security"). Without a stay, the trial court retained the ability to enforce the July 2, 2024 order. ***See*** Pa.R.A.P. 1701(b)(2). Additionally, the trial court retained the ability to proceed because the July 2, 2024 order was non-appealable and interlocutory. ***See*** Pa.R.A.P. 1701(b)(6).

[4] We recognize that the costs of this custody evaluation were quite large and understand that the financial costs associated with litigating custody matters often impose a considerable burden upon families. Nevertheless, the issue of whether the costs were reasonable is not properly before us in this appeal. *(Footnote Continued Next Page)*

did not abuse its discretion, we have considered that the "focus of a contempt hearing is very narrow[] and is confined to a consideration of whether the specific order before the court has been violated." *Harcar*, 982 A.2d at 1236. "The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *E.K.*, 237 A.3d at 526-27. It is axiomatic that judges have broad discretion to maintain control in the courtroom. *Behr v. Behr*, 695 A.2d 776, 779 (Pa. 1997). To ensure "the orderly and

---

Father raised the reasonableness of Dr. Green's fees at the first contempt hearing. As explained above, this Court dismissed Father's appeal because it stemmed from an unappealable interlocutory order. Father's appeal from the final November 21, 2024 order imposing sanctions encompasses a challenge to the prior July 2, 2024 interlocutory order. *K.H. v. J.R.*, 826 A.2d 863, 866 (Pa. 2003) (An appeal from a final order draws into question any prior non-final orders.). However, Father has waived any challenge to the underlying premise of the first contempt order by his failure to order the transcription of the June 2024 hearing. *See* Pa.R.A.P. 1911(a) (requiring the appellant to request and pay for any transcripts necessary for the resolution of issues raised on appeal); *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) ("When the appellant … fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.").

Even if Father had not waived this issue, we are doubtful that he would be entitled to relief. Parents' filings below are replete with mutual accusations of abuse, refusals to cooperate, parental alienation, and general discord. The trial court heard from Father and Dr. Green at the first contempt hearing and concluded that Dr. Green's fees were warranted, notwithstanding Father's personal opinion of how long it should have taken Dr. Green to wade through the dynamics in this protracted and highly contentious custody matter. That previous custody litigants might have been dissatisfied with Dr. Green's performance and provided a negative review on the internet does not establish that Dr. Green's fees in this particular case were excessive and unreasonable.

expeditious disposition of cases," courts are "vested … with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." **Id.** (quoting **Chambers v. NASCO**, 501 U.S. 32, 43 (1991)).

Father had the opportunity to set forth his argument in a written response to the petition for contempt. The trial court provided Father with the opportunity to explain his argument in opposition to the petition for contempt at the outset of the hearing. Father persisted in his attempts to argue points that he had presented at the June hearing and that the trial court had already considered and rejected, or points that were not relevant to the narrow scope of the November contempt hearing. Having heard Father's arguments at the first contempt hearing in June and read Father's written answer before the November hearing, the trial court was familiar with the substance of Father's arguments and his style of litigating his case. Affording a litigant an opportunity to be heard does not mean that the trial court must provide unlimited uninterrupted time to listen to a party's arguments. While we understand that navigating the legal system as a pro se litigant can be frustrating, nothing in the record before us indicates that the trial court acted with ill intent towards Father because of his ethnicity or his gender. Instead, the trial court used its power to maintain focus upon the hearing's narrow scope.

Because we conclude that the court did not abuse its discretion in holding Father in civil contempt, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2025